*Den on dem* of CHARLES MOORE v. N. THOMPSON *et al.*

The operations of building a shed, quarrying rock, erecting a lime-kiln and cutting wood to burn it for the purpose of making lime on the land in dispute, continued uninterruptly for more than seven years, constitute such a possession as will give a good tittle to the person claiming adversely under it.

The case of *Loftin* v. *Cobb,* 1 Jones 406, cited and approved.

This was an ACTION OF EJECTMENT commenced before the new Constitution, tried before his Honor, *Henry, J.,* upon the report of a referee at the last term of the Superior Court of HENDERSON county. The plaintiff had a judgment, and the defendants appealed. The facts are sufficiently stated in the opinion of the Court.

MOORE *v.* THOMPSON *et al.*

*Merrimon, Fuller & Ashe,* for defendants.
*McCorkle & Bailey,* for the plaintiff.

SETTLE, J. The plaintiff claims title to the lands in controversy under a grant from the State issued to John Miller in 1834, and it is admitted that he must recover, unless the defendants who claim under a grant from the State issued to George and Ephram Clayton in 1836 are protected by a peaceble, open, uninterrupted and adverse possession of seven years.

The writ issued on the 10th of March, 1860. The facts (as found by the referee and stated in his award) are that in the month of January, 1853, the defendants put Winfield Fletcher in possession of the premises in dispute in order that he might test a vein of rock on the premises and ascertain whether or not it was a lime vein, and if it proved to be lime to work it; that in January, 1855, he built a shed, quarried rock, built a kiln and cut wood to burn it on the land in dispute; that in the month of February, 1853, he burned the kiln which yielded about five hundred bushels of lime, and having tested the quarry and ascertained it to be lime, he cut wood and quarried rock on the premises for another kiln during the following Spring and Summer, leaving his tools in his shed during his absence until the Fall of 1853, when he took a written leave from the Claytons, which had been promised in January, 1853, and erected permanent improvements, and that the defendants have been in possession ever since. The authorities on this subject are collected and revised with care in *Loftin* v. *Cobb,* Jones 406, and we deduce from them the principle that the possession which will ripen into a title must be indicated by such acts as are sufficient to notify mankind that the party in possession is claiming the land as his own, and must be so repeated as to show that they are done in the character of owner and not of an occasional trespasser.

The leading idea is that there shall be notice to the world, so that any one claiming adversely may have an opportunity to assert his title. The acts of ownership in this case were of a nature calculated to attract more than ordinary notice. The discovery of a lime quarry and the working of it, like mining operations, from the very nature of things, would be discussed throughout the neighborhood, and attract, more attention than the ordinary operations of the farm, and the acts set forth were so connected and continuous as to constitute uninterrupted possession in contemplation of law.

There is error.

Let judgment be entered here for the defendants.

PER CURIAM.   Judgment reversed and judgment for defendants.