R. P. KING et al. v. JOHN W. WELLS et al.

*Adverse Possession— Color of Title—Judge's Charge—Exceptions in a Deed.*

1. Although the trial Judge lays down the law correctly in his charge, a new trial will be given, if the instructions are not applicable to the facts of the case, and not warranted by the evidence.

2. So where the Judge charged the jury, that if the defendant had occupied certain land adversely, under known and visible boundaries, for twenty years, they should presume *mesne* conveyances to him from the grantee of the State and those claiming under him, and there was no evidence of such possession, *It was held* to be error.

3. Where a wrong doer's possession of land is so limited in area as to afford a fair presumption that he mistook his boundaries, and did not intend to set up a claim within the lines of the other party's deed, it is a proper ground for presuming that the possession is not adverse.

4. So where the line was a long one, running over a wild, mountainous ridge, and the defendant had possession of less than a quarter of an acre, such possession was no evidence of an adverse possession of the entire lappage, in the absence of any evidence of a knowledge by the adverse party of such possession.

5. Where a deed conveying a large body of land contains the following words, "including all lands not heretofore sold," and a portion of the tract covered by the calls of the deed had been sold, such deed is not color of title to the tract previously sold, although embraced in its calls, and possession for seven years under it by the grantee will not give a good title.

6. In such case, the tract previously sold, is as much excluded from the operation of the deed, as if expressly excluded by metes and bounds.

(*Bynum* v. *Carter*, 4 Ired., 310; *Gilchrist* v. *McLauchlin*, 7 Ired. 310; *Harris* v. *Yarborough*, 4 Dev., 158; *McCormick* v. *Monroe*, 1 Jones, 13, cited and approved).

CIVIL ACTION, for the recovery of land, tried before *Gudger, Judge,* and a jury, at August Term, 1885, of the Superior Court of BUNCOMBE county.

The action was originally brought by Mary King, who filed the complaint herein, and at Spring Term, 1883, she having died since the beginning of the action, her heirs-at-law were permitted to make themselves parties plaintiff, and at the trial of the cause, by consent of the defendants, the said heirs adopted the complaint as theirs.

The plaintiffs claim to be owners in fee simple of a tract of land, set forth by metes and bounds in their said complaint, and alleged that the defendants were in the unlawful possession thereof.

The answer of the defendants denied that the plaintiffs are the owners of said land, and also denied that the defendants, or either of them, withheld the possession of the same from the plaintiffs.

The plaintiffs introduced in evidence on the trial, a grant from the State to David Allison, dated November 29th, 1796, for a large body of land, and proved, and it was afterwards admitted by the defendants, that said grant covered the *locus in quo.* The plaintiffs also introduced a deed from James Hughey, sheriff of the county of Buncombe, to Jno. Strother, dated the 20th day of September, 1796, for all the land covered by said grant from the State to David Allison, and proved by J. M. Israel and J. M. Lowry, that the court-house in the county of Buncombe was destroyed by fire in the year 1864, and that a part of the records of the Court were destroyed. This evidence of the destruction by fire of the court-house, was introduced for the purpose of showing that Buncombe county was included in the provisions of §69 of The Code, and that the recitals in said deed should be deemed, taken and recognized, as true in fact, and as *prima facie* evidence of the existence and validity of all records referred to in said deed. There was no evidence that any search of the records of the court-house had been made, or of what deeds were destroyed. The plaintiffs further introduced a deed in fee simple, from Jno. Strother to Solomon Knight, dated Jan 30th, 1802, for the tract of land in controversy; a deed from Solomon Knight to Jonathan King, dated October, 11th, 1806, for the same land; the will of Jonathan empowering his executor to sell said land, and a deed therefor from J. F. King, executor of Jonathan King, to Mary King, ancestor of the plaintiffs, dated October 2d, 1866, and proved that the said Mary King was dead, and that the plaintiffs are her heirs-at-law, and also proved that Jonathan King, and those claiming under him, have been in actual, open and notorious possession of a part of said land, under said deed, claiming the same up to the lines thereof, which were, as plaintiffs insisted, known and visible boundaries, from the date of his deed from Solomon Knight, to the commencement of this action, but had not been in possession of any part of the lap hereinafter mentioned.

There was a dispute as to the location of the land described in the deed from Jno. Strother to Solomon Knight, and the *mesne* conveyances to the ancestor of the plaintiffs. The plaintiffs claimed the beginning corner to be at a white oak on the west side of a small branch, and the calls of the deeds under which they claimed, represented a tract of land in the shape of a parallelogram, the longest line running north and south, and including the *locus in quo,* which was a small triangle on the south-east of said tract, formed by two of the lines of said tract, and a line of the land of the defendant, which intersected the land claimed by the plaintiffs.

The defendants insisted that the beginning corner of the plaintiffs' land, was further west than the corner claimed by the plaintiffs, and beginning at that point, and running according to the calls of the deeds under which they claimed, their title did not cover the *locus in quo.* The defendants introduced in evidence, a copy of a deed from the Register's office to James M. Lowry, Jno. H. Robinson and James M. Harbin, signed "David S. Reid, ex-Officio President Trustees U. N. C.," dated April 14th, 1854; a power of attorney from Lowry and Robinson to Harbin, dated August 8th, 1854; a deed from J. M. Lowry, John H. Robinson and J. M. Harbin, by J. W. Harbin, attorney, to Jno. W. Wells, dated October 6th, 1858. The plaintiffs objected to the introduction of the deed from David S. Reid to Lowry, Harbin and Robinson, for that it appeared to have been executed by him as President ex-Officio of the Board of Trustees of the University of North Carolina, and there was no evidence showing that he was Governor of the State of North Carolina, and was such President; and further, that there appeared no seal to said deed, either of David S. Reid or of the University. Objection was overruled, and plaintiffs excepted.

The defendants introduced evidence to show that the west, or north-west line of the said deed from Lowry, Harbin and Robinson, to John W. Wells, was located so as to include the *locus in quo,* which was a lappage, and claimed to be covered by the pa-

per title of both parties, and that said Wells, and those claiming title under him, had been in the actual possession of portions of the land covered by said deed to him from Lowry, Robinson and Harbin since 1844.

The evidence as to the possession of the lappage was conflicting. The defendant John W. Wells and another witness, introduced in behalf of the defendants, swore that twenty-four years ago, or in the Spring of 1861, said Wells moved out his fence, so as to cover about $\frac{1}{4}$ acre of said lappage, and that he had had possession of a small portion of the lappage since 1844.

There was other evidence, that in 1873, said Wells moved out his fence, up to the line, so as to include several acres of said lappage. The plaintiffs in reply, offered testimony to contradict the evidence that any part of the lappage was covered by the fence in 1861, but admitted that that built in 1873 did cover several acres of the lappage.

The plaintiffs asked of the Court the following special instructions :

" 1. The occupation of the defendants, by their fence and field, is the measure of their possession, unaccompanied by a deed or some conveyance to them, and they cannot enlarge their possession by declarations of a claim up to certain boundaries. That the occasional cutting of timber, and the running of lines and marking of trees, are but trespasses, interrupting, but not divesting, the owner's constructive possession.

" 2. That if the lands are located as the plaintiffs claim, and the plaintiffs have shown that they were sold and conveyed, prior to the dates of the deeds by the University to Lowry, Robinson and Harbin, and Lowry, Robinson and Harbin to Wells, then the lands in dispute have never been conveyed to the defendants or either of them, or any one under whom they claim, and they have no color of title by virtue of said deeds.

" 3. That there is not sufficient evidence to show a possession by the defendants, and those under whom they claim, for twenty years, for the land in dispute, under and up to visible lines and

boundaries, except so much as was occupied by the defendants' field, and as to the part covered by the field, unless the jury shall believe that the defendants have been in the actual occupancy of their field for more than 20 years, not counting from May 20th 1861, to Jan. 1st, 1870, the plaintiffs will be entitled to recover."

The Court charged the jury as follows:

"That the deed from David S. Reid, to Lowry, Robinson and Harbin, was not color of title to any lands held by other titles, or held under contracts in writing with Robert and James R. Love, prior to the date of said deed. And no possession short of twenty years, exclusive of the time between the 20th of May, 1861, and January 1st, 1870, would ripen title to the lands excluded from the operations of said deed by said exception. And that if the jury should find, that the lands in dispute are located as the plaintiffs claim, and were sold and conveyed prior to the date of said deed, they were not conveyed to the said Lowry, Robinson and Harbin, and they, the said Lowry Robinson and Harbin, had no title or color of title to the same, by virtue of their said deed.

"But that the deed from Lowry, Robinson and Harbin, to John W. Wells, was color of title to all the lands included in its boundaries; that the words used in said deed, "*including all lands not heretofore sold,*" were merely descriptive of the lands conveyed, and are not an exception. And that if the jury shall find that the said Wells, and those claiming under him, have been in possession for seven years, of any part of the lappage, the plaintiffs having no possession therein, then the title of said Wells would ripen to the whole of said lap, although they should find that the same had been previously conveyed, and was held by other titles at the date of said deed, and in such case, that they should find for the defendants, title having been admitted out of the State." Plaintiffs excepted.

"That if the defendant John W. Wells, and those claiming under him, had been in the continuous adverse possession of any

part of the land, covered by plaintiffs' deed, claiming the same up to known and visible boundaries, for twenty years before the commencement of this action, exclusive of the time from May 20th, 1861, to January 1st, 1870, claiming the same as his own, against all the world, and laying himself open to an action therefor, said Wells would have had a constructive possession for all the land, up to his known and marked lines, and that the jury should presume the necessary *mesne* conveyances to him from the grantee of the State therefor, although he had no deed, or paper title for the same." Plaintiffs excepted.

"That the deed from James Hughey, Sheriff of the county of Buncombe, to John Strother, was not valid as a link in the plaintiffs' chain of title, but was good as color. That the plaintiffs were required to show that the taxes of David Allison were due, and remained unpaid at the time of the sale of said land by said Sheriff; and to prove all the recitals in the deed, of things necessary for making valid said sale for taxes, otherwise the deed would not convey any title, but would give color merely." The plaintiffs excepted.

The following issues being submitted to the jury:

1st. "Are the plaintiffs the owners of the land mentioned in the complaint?" To which they responded: "They are not of that part included within the lines of the deed from Lowry, Harbin and Robinson to John W. Wells, but they are the owners of the lands beginning at the white oak stump, near the small branch."

2nd. "Are the defendants in possession of any part of said lands, and if so, of what part?"

To this the jury answered: "They are not in possession of any part of the lands, except that part included in the deed from Lowry, Harbin and Robinson to J. W. Wells."

The plaintiffs moved the Court for a new trial, which was overruled by the Court, and the plaintiffs excepted. Judgment was rendered for the defendants, to which the plaintiffs excepted, and insisted they were not, in the pleadings and finding of the

jury, bound for the costs of the action.    From this judgment, the plaintiffs appealed.

*Mr. Chas. A. Moore,* for the plaintiffs.
*Mr. Theo. F. Davidson,* for the defendants.

ASHE, J. (after stating the facts).    There was a good deal of evidence offered on the trial, and numerous exceptions taken by the plaintiffs to the ruling of the Court upon questions arising upon inadmissibility of evidence, all of which, except those herein set forth, we think impertinent to the real merits of the controversy.

After stripping the case of all extraneous and irrelevant matter, it narrows itself down to the exceptions taken by the plaintiffs to the charge of the Judge to the jury, in his instructions as to the presumption of a deed after an actual possession of twenty years, and the bar of the statute, after an actual adverse possession of seven years with color of title.

Although his Honor laid down the principles of the law correctly, as appertaining to those questions, his instructions were not applicable to the facts of the case.    For instance, his Honor charged the jury, that if Wells had possession of part of the land covered by plaintiffs' deeds, claiming the same up to known, and visible boundaries, for twenty years before the commencement of this action, exclusive of the time from May 20th, 1861, to Jan. 1st, 1870, claiming the same as his own, against all the world, and laying himself open to an action, he would have had a constructive possession of all the land, up to his known and marked lines, and the jury should presume the necessary *mesne* conveyances to him from the grantee of the State, although he should have no paper title."    The facts of the case did not warrant this instruction.    There was no evidence of an open and notorious possession of any part of the *locus in quo* by the defendant for twenty years, up to known and visible boundaries.

It was in evidence that the Northwestern line of the deed to Wells, made by Lowry, Harbin and Robinson, had been run for Wells in 1844, when negotiating with the Loves for some adjoining land, but there was no evidence that he ever obtained any deed from Love for land up to that boundary, or that he ever claimed the land up to that boundary, until he obtained the deed from Lowry, Harbin and Robinson, which was executed on the 6th of October, 1858. Nor even then did he have such a possession of the lappage, as would amount to such an open, notorious and adverse possession, as would presume a deed from lapse of time, for Wells himself testified that he had possession of some part of the lappage since 1844; and about the year 1861, he moved out his fence, so as to take in about one quarter of an acre of the lappage, but he did not say how much he had in possession before that time. It must have been a very small portion, since when widened out it only reached to ¼ of an acre.

The witness Wells, did not state whether he took that possession in assertion of his rights, or through inadvertence as to the line. When there is a long line, running over a wild, broken mountainous ridge, such as that was, up to which the defendant obtained a possesion, a small portion might be taken and held for years without any one knowing whether there was a trespass or not. Therefore, it has been held, that when the extent of a wrong doer's possession is so limited as to afford a fair presumption that the party mistook his boundaries, or did not intend to set up a claim within the lines of the deed of the other party, it would be a proper ground for saying that he had not the possession, or that it was not adverse." *Bynum* v. *Carter*, 4 Ired., 310; *Gilchrist* v. *McLauchlin*, 7 Ired., 310 ; *Harris* v. *Yarborough*, 4 Dev., 158. In this last case, RUFFIN, C. J., said : "I think that in such a case as this, there ought to be some evidence of the owner's knowledge of the claim, besides the mere possession of so small a parcel." But the defendant insisted, that if this possession, commencing in 1844, was not of such a character as to make it adverse to the plaintiff, he extended his fence

in 1861, so as to embrace some quarter of an acre of the lappage, but that cannot help the matter, for striking out the intermediate years, from the 20th of May, 1861, to the 1st of January, 1870, the defendant did not have twenty years' possession, prior to the commencement of the action on the 8th day of February, 1882. We think there was clearly error in his instructions on this point.

The plaintiff's next and most important exception, was to the charge of the Court, "that the deed from Lowry, Harbin and Robinson to John W. Wells, was color of title to all the land included in its boundaries; that the words used in said deed 'including all lands not heretofore sold,' were merely descriptive of the lands conveyed, and are not an exception,—and if the defendant had been in possession for seven years, of any part of the lappage, the plaintiff having no possession therein, then the title of said Wells would ripen to the whole of said lappage, although they should find that the same had been previously conveyed, and was held by other titles at the date of said deed."

This exception was well taken, and should have been sustained. The charge was erroneous.

Both parties claimed under the grant to Allison. The plaintiffs showed a long, uninterrupted possession, of some seventy-five or eighty years, by successive conveyances, of the land claimed by them, which the jury found covered the locus in quo, but neither they, nor those under whom they claimed, had ever been in the actual possession of the lappage.

The defendants claimed the adjoining tract, under a deed from the University, as escheated property, to Lowry, Harbin and Robinson, dated the 14th of April, 1854, in which, after describing the boundaries of a large body of land, there is the following reservation or saving, "within which there is much land held by other titles, and some tracts held under contracts in writing with Robert and James R. Love, which are excepted." And then in the deed from Lowry, Harbin and Robinson, to J. W. Wells, the defendant, bearing date the 6th of October, 1858,

23

after describing the boundaries by courses and distances, there is a similar reservation or saving, expressed in the words "including all lands not heretofore sold."

His Honor told the jury, that these words were not exceptive, but only descriptive of the land conveyed. It is true they were descriptive, but they were descriptive only of all the lands included in the boundaries, that were not included in the deeds and conveyances therebefore made to other persons. These lands were as much excluded from the operation of the deed to Wells, as if they had not been embraced within the sweeping boundaries of that deed. It not only did not profess to include them, but expressly excluded them from its operation, whenever it might be ascertained that they fell within the exception.

In the case of *McCormick* v. *Monroe*, 1 Jones, 13, where the exception in the deed was two hundred and fifty acres, out of 500 acres *previously granted*, Judge PEARSON speaking for the Court, said: "This would point to the means by which the description in the exception may be sufficiently certain to avoid the objection of vagueness, by aid of the maxim *id certum est, quod certum reddi potest.* It may be done by proving that a part of the 500 acres included in the plaintiff's grant, had been previously granted, and what part; and if such part covers the *locus in quo*, the defendant is not guilty of the trespass."

He further holds, that he who relies upon the exception, must support it by proof of the facts that bring it within the operation of the above maxim.

Upon this authority, we are led to the conclusion that the deed from Lowry and others to Wells, was not color of title to the land claimed by the plaintiffs and included in the deeds under which they claimed title, for the reason, that the deed from Lowry and others to Wells, did not convey to him the land covered by the plaintiff's deed, so that although he may have had actual adverse possession of the lappage for more than seven years before action brought, he had no such color of title as ripened his possession into an absolute title.

Our opinion is there was error, and this must be certified to the Superior Court of Buncombe county, that a *venire de novo* may be awarded.

Error.                                                        Reversed.