Collett *v.* The Board of Commissioners of Vanderburgh County.

Judgment affirmed.

Filed May 10, 1889.

No. 14,699.

COLLETT *v.* THE BOARD OF COMMISSIONERS OF VANDERBURGH COUNTY.

CANALS.—*Abandonment.—Adjoining Owners.—Title to Canal Bed by Prescription.*—Where a canal, instituted by the State and afterwards conveyed by it to a corporation known as the Board of Trustees of the Wabash and Erie Canal, for public purposes, was abandoned as a highway, and possession was afterwards taken by abutting lot owners, who filled up the channel and rescued the property, at great expense and in good faith, from becoming a public nuisance, and retained exclusive and continuous possession for twenty years, they acquire title by prescription as against one asserting a mere private proprietary interest in the land formerly occupied by the canal.

SAME.—*Property Held for Public Use.—Statute of Limitations.*—The rule that the statute of limitations may not confer a title by prescription in property held for an unabandoned public use, as against the State, or as against one asserting the rights of the public, has no application where it is invoked as a means of securing a merely private advantage to be enjoyed by an individual.

SAME.—*Title of Canal Trustees.—Extinguishment by Adverse Possession.*—Whatever proprietary title the trustees of the Wabash and Erie Canal asserted to the canal property, distinct from the public use to which it was

dedicated, was subject to be extinguished by adverse occupancy for the statutory period of twenty years.

SAME.—*Estoppel.*—After abandoning the public use and renouncing its obligation to the public, neither the corporation nor its assigns can retain the fee and protect a proprietorship therein by appealing to the repudiated public use.

SAME.— *What Constitutes Adverse Possession.*—An entry upon land with the intention of asserting ownership to it, and continuing in the visible and exclusive possession under such claim, exercising those acts of ownership usually practiced by owners of such land, and using it for the purposes to which it is adapted, without asking permission and in disregard of all other conflicting claims, is sufficient to make the possession adverse, and if continued for twenty years is equivalent to a grant.

From the Vanderburgh Circuit Court.

J. *Jump*, R. N. *Hudson*, C. F. *McNutt*, J. G. *McNutt* and F. A. *McNutt*, for appellant.

A. *Gilchrist*, C. H. *Butterfield*, D. B. *Kumler* and C. A. *DeBruler*, for appellee.

MITCHELL, J.—This is an appeal from a judgment rendered against Josephus Collett, in an action of ejectment brought by him against the board of commissioners of Vanderburgh county. The real estate in controversy consists of four lots in the city of Evansville, upon which the board of commissioners were proceeding to erect a court-house, and comprises what was formerly a portion of the property acquired by the State upon which to locate and construct a canal. Prior to 1847, under various acts of the Legislature, the State engaged in the construction, and operation to some extent, of a water-way, called the Wabash and Erie Canal, the design of which was to connect the waters of Lake Erie, at Toledo, Ohio, with those of the Ohio river, at Evansville, Indiana. After the project had been carried to partial completion by the State, for reasons which need not be repeated here provision was made by an act of the General Assembly, approved January 19th, 1846, for the organization of a corporation known as " The Board of Trustees of the Wabash and Erie Canal," to which corporation the Governor,

on the 31st day of July, 1847, pursuant to authority conferred by the above mentioned act, conveyed all the right, title and interest of the State in and to the canal and all its appurtenances. The property in controversy was a portion of the bed of the canal, and was transferred by the above mentioned conveyance. There was evidence tending to prove that after being used for purposes of navigation until about the year 1864, the canal was abandoned as such, at and in the vicinity of Evansville and at many other places, and that in a few years later it was abandoned entirely. It extended through the city of Evansville a distance of a mile and a half, traversing a number of the public streets. Commencing in 1865, the city authorities proceeded to fill up the canal at the various street crossings, and as early as 1867 it was filled at all, or nearly all, the crossings, and the canal was thus obliterated at those points. Water collected and became stagnant in the intermediate portions, which resulted in the enactment of an ordinance by the city requiring the owners of the lots to fill up the canal, which threatened the public health. At the May term, 1866, this court decided that the State acquired only an easement or servitude in the lands over and upon which the canal was constructed, and that the fee continued in the former owners. *Edgerton* v. *Huff,* 26 Ind. 35. Thereupon those who seemed to be the owners of the fee of the lots in controversy proceeded to fill up the canal, completing the filling, at a cost of about $2,000 a lot, in the year 1867. Thereafter the lots were regularly assessed for taxation against the several owners, until the year 1873, when the county of Vanderburgh acquired the title by regular conveyances from those in possession, and who had title as above.

The plaintiff claims title through a master's sale made in 1877, pursuant to a decree of the United States circuit court for the District of Indiana. In the bill of complaint upon which the decree under which the plaintiff claims was rendered, it was made to appear to the court that the corpora-

tion to which the canal and its appendages had been transferred had become insolvent, and that the canal had been abandoned and that the property was wasting in decay. Upon the subject of the abandonment of the canal, the bill contained the following averment, viz.:

"In consequence of inadequate water supply and the destruction, several times repeated, of the reservoirs, or water-basins, on the portion of the canal south of Terre Haute, navigation was but feebly maintained on that part of the canal for about two years, and about the year 1860, in consequence of such disabilities and the railway competition drawing off the traffic, the defendant, from want of means, was forced to and did abandon all further commerce and business on that portion of the canal south of Terre Haute, and for about ten years last past the water has been drawn from the bed on that portion, and the same has not been and can not be used as a public highway, as contemplated in the said acts and by the acts of Congress aforesaid."

The plaintiff seeks to maintain his title to the lots upon the theory that the State acquired the fee in all the lands appropriated for canal purposes, as was ruled by this court in *Water Works Co.* v. *Burkhart,* 41 Ind. 364, in which *Edgerton* v. *Huff, supra,* was overruled, and that through the conveyance by the Governor to the board of trustees of the Wabash and Erie Canal, and the master's sale and conveyance under the decree above mentioned, he is now invested with the title acquired by the State. This suit was commenced February 14th, 1888.

The board of commissioners gave evidence tending to prove that the county of Vanderburgh, and its grantors, had been in the open, continuous and exclusive possession of the lots in dispute, under a claim of title, during all the time since the year 1866, and the contention on its behalf is, that the county has thereby acquired an indefeasible title in fee simple by prescription.

The argument on the appellant's behalf is to the effect, that

the board of trustees of the Wabash and Erie Canal took and held the title to the canal and its appurtenances until the master's sale, in 1877, in trust for the benefit of the people of the State, to maintain it as a public highway and means of intercommunication, that the filling up of the canal by the grantors of Vanderburgh county was nothing more than the obstruction of a public highway, which constituted a nuisance, and that no prescriptive right could arise out of an indictable offence.    Hence, the argument is, the statute of limitations did not commence to run until the canal was sold in 1877.    It is contended, moreover, that the evidence does not show such an open, visible, continuous and exclusive possession, under claim and color of title, as is essential to create title by prescription.

If the assumption that the canal continued, to all intents and purposes, a public highway, until it was finally dismembered and sold out in 1877, had any substantial basis to rest upon, there would be force in the contention that the statute of limitations was not effectual to confer title to those who were in the adverse occupancy of the property in question.

If the canal had remained a great public highway, then the well established principle that no one can acquire an easement or right, hostile to that of the public, in a highway by prescription might well be appealed to by the public or its representatives to defeat the prescriptive title claimed by the board of commissioners.

Title by prescription rests upon the presumption of a grant.    But such a presumption will not be indulged in case a grant would have been unlawful or against public policy. Property held by the State, or by a corporation created by it for public purposes, and which is necessary to enable it to subserve the purposes for which the property was acquired, or for which the corporation was created, can not be granted away or transferred by the act of those who hold it in trust, without express authority to that end.    *Louisville, etc., R. W. Co.* v. *Boney,* 117 Ind. 501.

Where the rights of the public could not have been directly surrendered, they can not be lost or subverted indirectly by the laches or supineness of those who are charged with the duty of protecting them. *Sims* v. *City of Frankfort,* 79 Ind. 446; *Burbank* v. *Fay,* 65 N. Y. 57; *Pittsburgh, etc., R. R. Co.* v. *Reich,* 101 Ill. 157; 1 Am. & Eng. Encyclop. of Law, p. 297; 2 Dill. Munic. Corp., section 669.

The appellant is not, however, in a situation to invoke the aid of the principles above enumerated. He is not before the court representing the public, nor is he asserting a right to eject the board of commissioners of Vanderburgh county, so that he may use the property in question as a public highway. The foundation of his claim rests upon an assertion that the canal was abandoned as a public highway as early as the year 1860, and that in consequence he has acquired the title theretofore held for public purposes by the board of trustees of the Wabash and Erie Canal, as an individual, which he is now asserting for his personal benefit.

The property having been abandoned for public purposes, the State and the public having acquiesced in that abandonment for more than twenty years, it is now too late to assert a mere private proprietary interest in the land as such, against those who took and maintained actual possession in good faith and rescued the property, at great expense, from becoming a public nuisance. It is inconceivable how persons claiming to be the owners of the lots, who filled up the bed of the abandoned canal in order to abate a nuisance, were themselves guilty of creating a nuisance by obstructing a public highway.

After the corporation to which the canal and its appendages had been conveyed abandoned the canal and renounced its obligation to maintain it as a public highway, the most that it could claim was the right to hold the title to the property for its own benefit, as any other proprietor might have held it. This, by the acquiescence of the State and the public, it and its grantees have been permitted to do, and the

property has accordingly been sold out to individuals for private purposes. From the time of the abandonment of the public use, and while the property was held by the corporation and its assigns merely as owners of the soil, the land was subject, except possibly as against the State, to all the incidents of real estate held for private purposes. One of the incidents of the ownership of land thus held is, that the statute of limitations may initiate a claim of adverse possession, which, if continued without interruption for a sufficient length of time, may extinguish the title of the real owner and invest the person in possession with an absolute title in fee. *Roots* v. *Beck*, 109 Ind. 472 ; *Riggs* v. *Riley*, 113 Ind. 208.

Whatever proprietary title the trustees of the Wabash and Erie canal asserted to the property in question, distinct from the public use to which it was dedicated, was subject to be extinguished by adverse occupancy during the statutory period of twenty years. *Cady* v. *Fitzsimmons*, 50 Conn. 209.

After abandoning the public use, and renouncing its obligation to the public, the corporation would not be permitted to retain the fee and protect its proprietorship therein by appealing to the public use which it had repudiated. What the corporation could not do can not be done by its assigns, who stand in its place. If the board of trustees had made a grant of its interest as owner of the soil, the grant would have been good as against all the world, unless questioned by the State or by its creditors.

Although the statute of limitations may not confer a title by prescription in property held for a public use, as against the State, or as against one asserting the rights of the public, that rule has no application where it is invoked as a means of securing a merely private advantage to be enjoyed by an individual. *Miller* v. *State*, 38 Ala. 600 ; Wood Lim., p. 91.

Aside from the considerations already mentioned, the doctrine that the statute of limitations will not bar the rights of

the public has its proper limitations. Thus, when a public highway has been actually, or in part, abandoned, the State may be estopped from asserting the rights of the public when to do so would involve persons, who acted in good faith, in criminal consequences, or where irreparable injury would result to valuable improvements made in ignorance of the rights of the public. *Hamilton* v. *State*, 106 Ind. 361 ; *Louisville, etc., R. W. Co.* v. *Shanklin*, 98 Ind. 573.

The statute of limitations, operating alone, may not affect the rights of the public, or of a corporation holding property for a public use, but there may be instances where the abandonment or non-user of property devoted to such a use is so pronounced and so long continued as to invite or require the intervention of persons in order to protect private interests. In such a case the application of the principles which govern estoppels *in pais* will protect private rights thus acquired. *Cheek* v. *City of Aurora*, 92 Ind. 107 ; 2 Dill. Munic. Corp., sec. 667. The present is eminently a case of that character.

Without recapitulating the evidence, it is only necessary to say it tended to establish a continuous, visible and exclusive occupancy of the premises by the county and its grantors sufficient to initiate and continue a claim of adverse possession for more than twenty years. Costly improvements were made by filling up the canal, thereby obliterating every trace of the public highway, and making it obvious to every one that the original proprietors were in hostile possession, exercising acts of ownership over the real estate as such.

An entry upon land with the intention of asserting ownership to it, and continuing in the visible, exclusive possession under such claim, exercising those acts of ownership usually practiced by owners of such land, and using it for the purposes to which it is adapted, without asking permission and in disregard of all other conflicting claims, is sufficient to make the possession adverse. Such a possession, continued for twenty years or more, is equivalent to a grant.

*Roots* v. *Beck, supra ; Riggs* v. *Riley, supra ; Bell* v. *Longworth,* 6 Ind. 273; *Blanchard* v. *Moulton,* 63 Me. 434; *Clement* v. *Perry,* 34 Iowa, 564; *Moore* v. *Thompson,* 69 N. C. 120. There was no error.

The judgment is affirmed, with costs.

COFFEY, J., did not participate in the consideration of this case.

Filed May 11, 1889.