## I. L. McLEAN v. NANCY SMITH.

*Possession—Lappage—Presumption—Intent—Evidence.*

1. Where the title deeds of two rival claimants to land lap upon each other, and neither is in the actual possession of any of the land covered by both deeds, the law adjudges the possession of the lappage to be in him who has the better title.

2. If one be seated on the lappage, and the other not, the possession of the whole interference is in the former.

3. If both have actual possession of the lappage, the possession of the true owner. by virtue of his oldest title, extends to all not actually occupied by the other.

4. Where the father of a junior grantee enclosed within his field, thirty-five or forty years before the trial was brought, an acre of the lappage, including the site of one of the four corners of defendant's land, and he and the plaintiff, as his successor, had cultivated said land continuously for more than thirty years before the action was brought: *Held*, nothing more appearing, (1) that plaintiff's father would be presumed to have enclosed the field and cultivated it in the assertion of a claim of right under his deed, and his possession would extend to boundaries of his deed ; (2) that in order to make the question of intent one for the jury, there must be testimony tending to rebut the presumption raised by such possession ; (3) that the jury can pass upon the intent, where the apparently adverse occupancy extended over an area so minute or insignificant that the occupant might naturally have mistaken his boundary, and the true owner would not, by ordinary care and vigilance, have discovered the trespass thereon, where there is evidence of an actual mistake of the parties in the original location of a division fence ; (4) that the test of the character of the possession is involved in the question whether the true owner could maintain an action of trespass against the occupant; (5) that the Court erred in leaving the jury to pass upon the intent in this case, because there was not sufficient evidence tending to rebut the presumption of adverse claim.

5. Occasional entries on the lappage by the holder, under the senior grant, for the purpose only of cutting trees or hauling light-wood or pine straw off, would not extend her possession to all of the interference, except the actual *possessio pedis* of the plaintiff.

---

* Head-notes by Avery, J.

6. She must show that she continuously subjected some portion of the disputed land to the only use of which it was susceptible, unless she herself, or her servants or agents occupied a house upon it, or kept some portion of it enclosed, before she can limit the operation of plaintiff's possession to his enclosure.

CIVIL ACTION, tried before *Merrimon, J.*, at January Term, 1889, of the Superior Court of ROBESON County.

It was admitted by the parties that the title to the land was out of the State, and the plaintiff admitted that the defendant had and held under the older grant.

A plat of the plaintiff's and defendant's lands, showing the line of their respective tracts, and a lappage, A, B, C, D, A, is here given as a part of the case on appeal:

A, B, C, D represents lap.
Dotted lines show plaintiff's field, about ¼ acre of which is on lap.
Broken lines show defendant's field, about ¼ acre on lap.
The part of lap outside of the dotted and broken lines is wood land.

McLean *v.* Smith.

The plaintiff testified that he is in possession of the lands conveyed by his father's grant; his residence had been there since he could remember; his possession inclosed by fence; in cultivation thirty-five or forty years ago; fence around it now; fence has been moved in once or twice; it was cultivated a long time before fence was moved in; part between "O" and "X" was once in his inclosure; the other part was woodland, outside of "X"; he had been using it for anything he could use woodland for; made rails, lightwood; cut one stick of timber off of it, about all there was on it; had been there twelve years; had farm under his control; don't know how long his father lived there; can remember thirty-five years back; has known his father to make rails on it and haul straw; his father kept up fence around "X" since he (witness) can remember; his father did in 1876; there is a possession by defendant Henry McLean, defendant Nancy Smith's tenant at "O" ("O" on plat); he moved there in 1879 ("O" is a field); has been there ever since. Summons issued in this case December 22, 1884; the part at "O" not worth much—not more than one-fourth an acre—something over three acres in lap; didn't know where his line was until D S. Morrison surveyed it, about the year 1880; never knew defendant Nancy claimed it; he claimed all the grant called for; didn't know where the line called for; told McCaskill, about 1879, he was using the land outside of his field. Nancy Smith has been in possession of her land; there was clearing on a it when he could recollect; didn't mean to take possession of defendant's land when he went there; defendant showed him once about where his line run; she showed him about where his corner was.

Daniel Leach testified, for the defendant, that he knew where the lands in dispute were; had known all his life; was thirty odd years old; was principally raised there; had hauled lightwood and straw off the land for the defendant;

did it when he was a little boy (before the war), and continued to do it.

W. J. Currie testified, for defendant, that he had got timber off the land, and paid defendant for it; never heard of the plaintiff's claim till the commencement of this action; got pine timber off the land four or five years ago; was agent for defendant Nancy.

This was about all of the oral evidence in the case.

The plaintiff requested the following special instructions:

That if the jury believe from the evidence that the plaintiff, and those under whom he claims, have had actual possession under color of title for seven years or more, by enclosing or cultivating some of the land in space "X," being actually seated on same—the defendant, nor those under whom she claims, not being seated on the interference at all during this time—the possession of the whole lappage covered by both grants would be in the plaintiff exclusively, the possession of part included in both grants being possession of all of it, and plaintiff would have a good title to the whole, and would be entitled to recover, though his is the junior grant.

The Court declined to charge as requested, and the plaintiff excepted

The Court instructed the jury that, if the plaintiff's ancestor entered upon the lap with the intent to claim against the defendant, who, the plaintiff admits, has and claims under an older grant, and occupied it for seven years under his grant, openly and notoriously, so as he exposed himself to the action of defendant, or those under whom she claims, his title would be completed and perfect; but, if the ancestor of the plaintiff did not intend to set up a claim within the line of defendant's lands, his possession was not adverse, and plaintiff could not recover.

Plaintiff excepted.

The plaintiff claimed through his father, and defendant had the older grant. It appeared to the Court that the testimony of the plaintiff did not show necessarily an adverse possession of the lappage by the plaintiff's ancestor, and that it was a proper case to leave it to the jury to say with what intent the ancestor placed his fence across the defendant's line at "X." If the ancestor's possession was not adverse to defendant, the evidence did not show an adverse possession by the present plaintiff for seven years of any part of the lappage except that enclosed by his fence. He testified himself that his possession began in 1876, and that defendant's tenant, Henry McLean, went into possession of the lot at "O" in the year 1879.

There was a verdict for defendant. Plaintiff moved for a new trial. Motion denied. Plaintiff appealed.

*Mr. T. A. McNeill* (by brief), for plaintiff.
*Mr. William Black*, for defendant.

Avery, J.—after stating the facts: It is settled that where the title deeds of two rival claimants to land lap upon each other, and neither is in the actual possession of any of the land covered by both deeds, the law adjudges the possession of the lappage to be in him who has the better title. If one be seated on the lappage and the other not, the possession of the whole interference is in the former. *Green* v. *Harman*, 4 Dev., 158; *Williams* v. *Miller*, 7 Ired., 186; *Scott* v. *Elkins*, 83 N. C., 424; *Dobbin* v. *Stevens*, 1 Dev. & Bat., 5; *Smith* v. *Ingram*, 7 Ired., 175; *Kitchin* v. *Wilson*, 80 N. C., 191. But if both have actual possession of the lappage, the possession of the true owner, by virtue of his older title, extends to all not actually occupied by the other.

When the plaintiff's father, under whom he claims, enclosed, thirty-five or forty years before the trial (at the end of the parallelogram formed by the lapping lines of the two

one hundred-acre deeds), one acre of the three and three-eighths acres embraced in the disputed territory, the presumption was that he entered in the assertion of a claim of right under his deed, which covered his possession as it is now and was at the trial, and also (nothing more appearing than that he had enclosed and cultivated it in the ordinary course of husbandry) that his title to it had matured after seven years of such possession. *Berryman* v. *Kelly*, 13 Ired., 269; *Williams* v. *Buchanan*, 1 Ired., 535; *Yatès* v. *Yates*, 76 N. C., 146; *Lenoir* v. *South*, 10 Ired., 237; *McCormick* v. *Munroe*, 3 Jones, 332; Malone R. P., p. 99; *Kinney* v. *Viven*, 32 Tex., 125; *French* v. *Pierce*, 8 Conn., 443; *Staton* v. *Mullis*, 92 N. C., 623. His adverse possession under a deed with definite boundaries extended to all land covered by it. *Davis* v. *Higgins*, 91 N. C., 382; *Lenoir* v. *South, supra,* If every man who is induced by an honest misunderstanding as to the sufficiency of a title that purports upon its face to convey land to enter into possession were denied the benefit of his open, notorious adverse occupancy until he should take the laboring oar and satisfy a jury that he did not make a mistake, the difficulty of proving the actual intent entertained by one under whom claim is made, in first entering on the land, would often destroy titles acquired by possession and universally recognized as good. Indeed, the doctrine of color of title is founded upon the idea of entering upon land in the reasonable belief that one is the true owner. Sedgwick & Wait, sec. 759. The defendant did not extend her fence across the lappage at " O," in the other extreme corner, till 1879, when the previous possession of the plaintiff, if it was not equivocal, had already vested the title to the whole in the latter. Occasional entries on or before that time by the defendant for the purpose only of cutting trees or hauling lightwood or pine straw off the land, would not constitute a possession on her part and extend, constructively, as was

contended on the argument, to all of the interference except the actual *possessio pedis* of the plaintiff. *Williams* v. *Wallace,* 78 N. C., 354; *Bartlett* v. *Simmons,* 4 Jones, 295; *Loftin* v. *Cobb,* 1 Jones, 406; *Everett* v. *Dockery,* 7 Jones, 390; *Morris* v. *Hayes,* 2 Jones, 93. She must show that she continuously subjected the same portion of the disputed land to the only use of which it was susceptible, if she herself or her servants or agents occupied a house upon it, or kept some portion of it enclosed, before she can limit the operation of plaintiff's possession to his enclosure, *Williams* v. *Wallace, supra; Moore* v. *Thompson,* 69 N. C., 120. The extreme length to which this Court has gone on that subject was in holding that making turpentine annually on land, or constructing a team-way into and bringing cypress and juniper from swamp-lands, unfit for other use, was a possession that would mature title under color. *Bynum* v. *Carter,* 4 Ired , 313; *Tredwell* v. *Reddick,* 1 Ired., 56.

It devolved upon the defendant to show, by the testimony offered by the plaintiff, or that introduced on her own behalf, or for both, that the possession at "X" was, as she contended, equivocal in its character. If she offered competent testimony tending to rebut the presumption raised by the long continuous possession of plaintiff, under color of title, it was proper to submit it to the jury, for it is as essential to the efficacy of possession in maturing title that it should be open and unequivocal as that it should be continuous. *Osborne* v. *Johnston,* 65 N. C., 22. But it has been held proper to allow the jury to pass upon the character of the possession only in cases where the apparently adverse occupancy extended over a very insignificant area, and there was, moreover, evidence tending directly to prove that the entry was made by mistake on the part of the holder of the junior grant, or on the part of both him and the true owner, as where the former, or both, acting in concert, have made slight departures from the correct line, in locating and

building a fence without a compass, between corners or known points in the dividing line, and in cases where the holder of the superior title did not show a want of diligence, according to the admitted facts, in failing to bring an action against the intruder till the end of the statutory period. Wood on Lim. of Actions, § 263 ; *King* v. *Wells,* 94 N. C., 344; *Green* v. *Harman, supra; Gilchrist* v. *McLaughlin,* 7 Ired., 310; Buswell L. & A. P., § 250. The test by which we can determine whether there is sufficient evidence to submit to the jury as to the intent of the holder of the junior title, when he first entered upon the land in controversy, is involved in another question, Whether there is testimony tending to show that the true owner might then have failed to recover in an action brought against an intruder, because the circumstances indicated that it was an entry by a mistake as to the location of a line upon a very minute territory belonging to the former? It is admitted that about one acre of the area in dispute was enclosed in the plaintiff's field. It does not appear how far it extended over the lappage, but, as it seems on the map sent up to cover about one-fourth of the land in controversy, we are at liberty to assume that the fence may have extended seventy or one hundred yards over the line of defendant's grant. We have no information that either plaintiff's father, or defendant, or both, *actually made* any mistake, or had any understanding about the location of the fence forty years or more since. The quantity of land taken into the enclosure is not so insignificant that a vigilant man would have overlooked the trespass, or that a man who knew what he was doing would have committed it otherwise than for the purpose of asserting title to his boundary. Besides, the defendant has shown *laches,* indeed inexcusable want of diligence, in failing to ascertain that the plaintiff had enclosed inside of his field one of the four corners of her one-hundred-acre tract of land, it being in the shape of a parallelogram. If she had had her land surveyed at any

time within thirty years or more, she knew this fact. She was very negligent if she failed for that period, or for seven years even, to ascertain the location of her corner, or, if knowing where it was, she slept upon her rights till long after the end of the statutory period. If she had brought an action against the plaintiff's father for trespass before he had held the possession seven years under his grant therefor, there would have been no evidence, as far as we can see, to go to the jury tending to show, under the plea of not guilty, that he made a mistake in cutting down the corner tree and clearing and enclosing an area of land around it, so as to include nearly the whole width and about one-fourth of the length of the lappage, and to extend (we are not informed how far, but we may assume) probably seventy or one hundred yards over the line for about one-fourth of its length. The testimony tends to show, if it has any bearing upon his intent, that plaintiff's father entered with the purpose of asserting title under his grant, and the law presumes that such was his intent, if nothing appears to the contrary. The fact that the fence had been twice moved, without showing how far or why its location was changed, would not tend to show that he made a mistake in constructing it at first.

In *King* v. *Wells*, 94 N. C., 344, the Court said: "Where there is a long line running over a wild mountainous ridge, such as that was, up to which the defendant obtained a possession, a small portion (in this instance less than one-fourth of an acre) might be taken and held for years without any one knowing whether there was a trespass or not." Therefore, where the extent of a wrong doer's possession is so limited as to afford a fair presumption that the party mistook his boundaries, or did not intend to set up a claim within the lines of the deed of the other party, it would be proper ground for saying that he had not the possession, or that it was not adverse."

In *Green* v. *Harman, supra,* Chief Justice Ruffin says: "There ought to be some evidence of the owner's knowledge of the claim besides the mere possession of so small a part. And if the land taken is *very minute,* so that an *owner* of *reasonable diligence* and *ordinary vigilance* might remain ignorant that it included his land, the possession should not be deemed adverse." But in this case we know the fact that the defendant carelessly permitted the father of the plaintiff for more than twenty years, and the plaintiff for several years, to cultivate a considerable body of land, including the site of a muniment of title, without bringing an action for the trespass. There was less than a fourth of an acre taken by the long line of Wells' fence in the case of *King* v. *Wells,* and his counsel contended that when he extended his fence so as to actually take in one-fourth of an acre, in 1861, it was no longer a *minute* portion. Seeming to concede the correctness of the position, if sustained by the facts, the Court said that the period from 1861 to the bringing of the action was not sufficient, omitting in the computation the time when the statute of limitations was suspended. After examining the authorities, we conclude that, where the extent of the trespass on the part of the junior grantee is so great that it should have attracted the attention of a vigilant owner, and there is no direct testimony tending to excuse the negligence of the senior grantee in failing to bring an action against the intruder, there is no evidence to go to the jury to rebut the presumption that the former acquired title to the extent of his boundaries at the end of the statutory period, which, in this case, is seven years. *Lenoir* v. *South, supra.* In such instances there is no probable ground for believing that the encroachment was inadvertent and without claim of right on the part of the former, nor permissive or overlooked without fault on the part of the latter. There was error in refusing the instruction asked, for which there must be a new trial.

Merrimon, C. J., dissented. Error.