McLean *v.* Smith.

---

J. L. McLEAN v. NANCY SMITH et al.

*Adverse Possession—Lappage— Conflicting Grants—Evidence.*

1. In an action by a junior grantee against a senior grantee to recover possession of land included in both grants by reason of a lappage, it appeared that plaintiff and his predecessors were in possession

of a portion of the lappage for more than seven years before defendant entered on, and actually occupied, another portion of it; the only evidence of any attempt by defendant to exercise dominion over the lappage before such entry was that her tenants entered at intervals and cut timber for rails and removed pine straw from it: *Held*, that it was error to submit to the jury the question as to whether defendant, during such seven years, occupied and used any portion of the lappage "for any purpose such land could be used for," it not having been shown that the land was unfit for cultivation and had been used for the statutory period for the only purpose for which it was available.

2. In such case it was error to refuse to allow the plaintiff to show what his intent was in inclosing the part of the lappage occupied by him.

This was a CIVIL ACTION, tried before *Graves, J.,* at Fall Term, 1890, of ROBESON Superior Court.

There was documentary evidence tending to show title in plaintiff and those under whom he claims of the land described in his grant dated 20th December, 1791, by successive links, as follows: Grant to Angus Smith, dated 20th December, 1791; deed from Angus Smith to Daniel Smith, dated 20th August, 1795; deed from Daniel Smith to Gilbert Taylor, dated 10th April, 1797; deed from Gilbert Taylor to John McLean, dated 25th December, 1810; deed from John McLean, of Richmond county, North Carolina, to John McLean, of Robeson county, North Carolina, dated 1st April, 1831; deed from J. C. McCaskill and others to J. L. McLean, dated 19th December, 1884.

Also there was evidence of the same character tending to show title in the defendant Nancy Smith and those under whom she claimed of the land described in grant to Richard Smith, and successive links, as follows: Grant to Richard Smith, dated 18th May, 1789; deed from Tryon Smith to Daniel Smith, dated 1st December, 1794; deed from Daniel Smith to Archibald and John Smith, dated August, 1795; deed from Archibald and John Smith to Duncan Smith, dated 11th March, 1799.

The plaintiff, J. L. McLean, testified as follows: "My father was John F. McLean, of Robeson county; he died fifteen years ago; his heirs are McCaskill's wife, my sister Amanda, and myself; John McLean was my grandfather; John McLean, grantee in the deed of 1831, was my father; I claim the beginning corner at 'Red O'; I made rails near the line A B; she (Miss Nancy Smith) complained I had gone over the line; she pointed me to a large tree which had been cut for ton-timber; she told me that was the corner; I was with Purcell when he surveyed; found marked tree twenty steps; at one hundred yards found a fore and aft marked tree, and further on found others, until we got into the field; from B to C old field; from C to D found only a hickory marked, but I do not think it was marked as a line tree of the grant; from D to E, field; from E to A found several old marked trees; cut in and found marks were old; one marked tree inside of fence; tenant of Nancy Smith occupies a little patch on the lappage; my dwelling is on the 100-acre grant; my father built the house I live in; I am fifty years old; my father cleared most of it; I have cleared some since; 'Red X' has been cleared and in cultivation ever since I can remember; I think, from the appearance of the land, my father had moved in the fence in his life-time as much as an acre, and I turned out some when I moved the fence in again; the land had been worn out; between 'Red X' and 'Red O' uncleared; I have cut one stick of timber, hauled straw, cut rails and wood on it; my father had made rails on it and used it for same purpose that I used it; defendant never forbade me from such uses of said space; there is not more than one-fourth of an acre in 'Red O'; Miss Smith's tenant is in possession of a little field, or patch; my fence does not follow line A B; possession at 'Red O' was begun in 1879 or 1880 by defendant Henry McLean,

McLean *v.* Smith.

Miss Nancy Smith's tenant, and the same occupant has been there all the time since."

*Cross-examination.*—"I did not get permission to gather straw; did not ask for leave then; I meant there was one-fourth of an acre under fence; the fenced part of the land is nearly thirty acres; Miss Smith is nearly seventy years old; the appearance of the land indicates that it has been used; it is grown up in old fields; I suppose they used it for such purposes as it was fit for; it was not boxed; I knew D. S. Morrison; he was a surveyor. I did not see him survey Nancy Smith's land; we surveyed part of my land somewhere about 1879 or 1880, after Henry McLean went there; I knew there was a lap, had heard my father say so; I did not know exactly where the line was; I had cut rails west of A B; Nancy Smith claimed that and showed me the beginning corner of the line: I knew almost where the line was before; think I knew within four yards before 1880; Morrison did not run all my lines; I said on former trial I did not know where my land was; I do not know about land being divided by Fairly; this land in dispute is near both lines; Smith had a corner at A." The defendant proposed to ask the plaintiff as to his intent in occupying the land. Plaintiff objected. Objection overruled. Plaintiff excepted. "I found fence there (at 'Red X'), and kept it there to assert my right from the time I took charge of the land; my father died in 1876, and I took charge then."

*Re-direct.*—"Defendant had no occupancy at 'Red O' before Henry McLean added to his clearing in 1879, and took in 'Red O'; the general direction of Lumber river is south-east."

Daniel Leach testified for the defendant as follows:

"Nancy Smith raised me; I know the land in dispute; we got wood and straw there; I am thirty-odd years old;

got wood and hauled straw and lightwood, everything we could use the land for; I was big enough to haul straw; I knew J. F. McLean; never saw him or his hands at work there."

*Cross-examined.*—"I hauled some straw off since Henry went there; can't tell when I hauled last straw before Henry went there; I found out there was a lap a few years ago, about the time these surveys were made; Miss Nancy Smith always claimed the land, and we never knew there was any dispute; she did not know of any lapping land."

There was other testimony to the same effect.

The following issue was submitted to the jury:

"Is the plaintiff the owner and entitled to the possession of the land described in the complaint, or any part thereof?

"If so, what part?

"What is rental value of the land?"

The plaintiff prayed the Court to instruct the jury as follows:

"1. That if they believe the testimony as to location of the 100-acre grants, dated respectively, 20th December; 1791, and 18th May, 1789, under which plaintiff and defendants deduce their title, it presents a case of lapping or interfering grants.

"2. That if the jury believe from the evidence that the plaintiff and those under whom he claims have had actual possession under color of title for seven years or more, by inclosing and cultivating the same, of the land in space 'Red X,' being actually seated on same, the defendant, nor those under whom she claims, not being seated on the interference at all during this time, the possession of the whole lappage covered by both grants would be in the plaintiff exclusively, the possession of part including in both grants being possession of all of it, and plaintiff would have a good title to the whole, and would be entitled to recover, though his is the junior grant."

It appeared on the trial that this same case had recently before been heard on appeal in the Supreme Court, and the opinion of the Supreme Court was read and commented on by the counsel on both sides, the counsel for plaintiff insisting that upon the proof in this trial the plaintiff was entitled to the entire lappage, and the defendant insisting that the evidence in this trial that the possession of plaintiff was confined to so small a space that the jury might reasonably infer that the plaintiff entered by mistake, not intending to assert his right, so that his occupation was not adverse; and further, that if plaintiff's occupation was adverse it could not be extended beyond the actual occupation to the entire lappage, because, as the defendant insisted, she had openly and continuously actually used that part of the lap not inside plaintiff's fence for all purposes for which such land could be used. There was also much contention as to the location of the conveyances offered in evidence. The plaintiff asked the instructions set out in the case, and the defendant also asked instructions, which are not material to be set out.

The charge was in substance:

"The construction of written instruments is usually a matter of law for the Court to determine. So it becomes the duty of the Court to say whether the descriptions in grants and deeds offered in evidence are sufficiently certain to admit of location by the aid of the oral testimony of witnesses. Upon reading and inspecting all the deeds and grants offered in evidence the Court instructs you that each one of them is sufficiently certain in description to admit of proof as to its proper location. What are the boundaries in a deed or grant is a matter to be determined by the Court; where the boundaries are to be located is a matter of fact to be settled by the jury upon all the evidence. Now the boundaries are the lines called for in the deeds

and grants; that is, the several objects called for and the courses and distances when not controverted by natural objects or the known boundaries of other tracts. It sometimes happens that a mistake is made in writing the calls in a deed, and if it palpably appear that such mistake has been made we may correct it. That in an endeavor to locate deeds and grants the area or quantity called for may be shown in evidence to aid the jury in determining the location of boundary. These instructions as to locating the boundaries called for in deeds and grants apply to the deeds and grants offered by each party alike.

"If the jury shall find that lands claimed by plaintiff are located as he claims, and that land claimed by defendant is located as she claims, and shall find that the several mesne conveyances offered by plaintiff cover the land covered by the grant under which he claims, and the several mesne conveyances offered by defendant cover the same land covered by grant under which she claims, then there is a lapping of the boundaries of the plaintiff over inside the boundaries of the defendant, and this is what the lawyers and law-books call a lappage or interference. In such cases—that is, when boundaries called for in the deed of one claimant lap over inside the boundaries called for in the deed of a rival claimant and neither party is in the actual occupation of the lappage—the law adjudges the possession to follow the better title. In this case the grant under which the defendant claims is the older grant, and if nothing more appeared than this one fact she would have the better title; but the plaintiff insists that he has shown other facts; the plaintiff insists that he has shown that for a longer time he has had actual, open and continuous possession of a part of this lappage by fencing, clearing and cultivating it. If he has had such occupation more than seven years such occupation gives him the title to all he

McLean v. Smith.

has so occupied, and to the whole of the lappage, if nothing more appears, but the defendant insists that she has been in the open, notorious, continuous occupation of a part of the lappage, all outside of plaintiff's fences, for a long time, using it for all purposes for which such land could be used. If this is true then she is entitled to all the lappage not actually occupied by the plaintiff; the mere hauling pines or pine straw, or wood, occasionally, would not be sufficient, but if she, openly and notoriously and continuously for several years occupied it and used it for every purpose such land could be used for, then she would be entitled to all outside of plaintiff's possession at 'Red X.'

"The defendant insists that the land at 'Red X' is so small in quantity that the jury must believe it was inadvertently entered upon by plaintiff, and that he has not held it adversely, intending thereby to assert his right. In some cases it occurs that adjoining owners, by mistake, place the fence a line away from the line, not intending to assert any rights; but in such a case as this, if you believe that the plaintiff, and he, or those under whom he claims, built his fence, inclosing the land and cultivating it for more than seven years, then the plaintiff has title to all the land inside his fence at 'Red X,' and he is entitled to the whole lappage, unless the defendant has shown that she has been in possession of some part of the lappage for seven years before this suit began, using continuously and adversely for all purposes for which such land could be used. But if she has been in such open, continuous, notorious possession under her claims of right, then she would have title to all that part of lappage outside the plaintiff's fence, and in determining how this is the jury may consider the evidence as to situation and quality of the land, and for what purposes it can be used, and also to consider the evidence of defendant as to what use she did make of

the land in the lappage, as by hauling straw, getting light-
wood, etc., but merely hauling straw·and getting lightwood
occasionally is not sufficient evidence; it must appear she
used the lands for all purposes it was fit for, continuously
under claim of right, openly and notoriously."

There was a verdict on the first issue that the plaintiff
is entitled to all the land claimed except that part of the
lappage outside of his fence, and to that the defendant was
entitled.

The plaintiff moved for a new trial, which was refused,
and from the judgment for the defendant the plaintiff
appealed.

The following.is the map referred to in the opinion:

McLean v. Smith.

Mr. *Thomas A. McNeill*, for plaintiff (appellant).
Messrs. *Black & Patterson*, for defendant.

AVERY, J.: According to the undisputed testimony the plaintiff and those through whom he claims had been in possession, under the junior title, of a small portion of the lappage (marked " X " on the map) for about forty years; at all events for more than seven years before the defendant's tenant in the year 1879 first entered upon and actually occupied a portion of it (marked "()" on the map) in the assertion of her claim under the older title. The only evidence offered to show any attempt by defendant to exercise dominion over the lappage before 1879 was that her agents or tenants entered at intervals and cut timber for rails and removed pine-straw from it. Such occasional acts did not constitute an occupation that would mature title or arrest the running of the statute in favor of the plaintiff, if he, claiming under the junior title, had inclosed and was cultivating a portion of the lappage. *McLean* v. *Smith*, 106 N. C., 172; *Ruffin* v. *Overby*, 105 N. C., 78; *Williams* v. *Wallace*, 78 N. C., 354. The Court below erred when upon such testimony the jury were left to determine whether the defendant for seven years occupied and used any portion of the lappage "for any purpose such land could be used for." There was no evidence that she erected a house or made an inclosure upon the interference prior to 1879, five years before suit was brought. The instruction would have been warranted by the testimony if it had been shown that the land in controversy was not susceptible of cultivation and had been used continuously for the statutory period for the only purpose for which it is available, but not when the exercise of dominion consisted in getting pine straw, cutting rails or fire-wood at intervals. *McLean* v. *Smith*, *supra*; *Tredwell* v. *Riddick*, 1 Ired., 56; *Bynum* v. *Carter*, 4 Ired.,

310; *Bartlet* v. *Simmons*, 4 Jones, 295; *Loftin* v. *Cobb*, 1 Jones, 406, and *Williams* v. *Wallace*, *supra*. The witnesses testified that she had not at any time boxed any of the trees in order to get turpentine. If this error was not sufficient it seems that the Court refused to allow the plaintiff to show his intent in inclosing a portion of the lappage at "X," which it was certainly competent for him to do. While we held on the former appeal that the presumption generally arose that a person entered on any land within the limits of his deed in the assertion of a claim of title to outside boundaries of it, and that the presumption was strengthened by the fact that the plaintiff had inclosed the site of defendant's corner, and other circumstances mentioned, it was not intimated that the defendant would be precluded from showing circumstances competent and calculated to rebut the presumption, nor is there any reason why the plaintiff may not strengthen the presumption by showing that he did not enter on the lappage by mistake, but actually intended to assert his title thereto by such occupation.

The learned Judge who tried the case was doubtless led into error, as suggested, by the fact that his attention was not directed to the opinion on the former appeal. The plaintiff is entitled to a                      New Trial.