*ANNE M. RUFFIN et al. v. JAMES OVERBY.

*Color of Title—Adverse Possession—Evidence.*

1. In proving continuous adverse possession under color of title, nothing must be left to conjecture. The testimony, if believed, must show the continuity of the possession for the full statutory period in plain terms, or by necessary implication.

2. One entering upon land under a deed, or color of title, that definitely describes the metes and bounds of the land conveyed, or purporting to be passed to him, is presumed to prefer claim to all of the land covered by the paper title under which he holds, and no further.

3. Where one enters upon land, as a lessee of a definite portion of the territory, covered by the deed under which his lessor claims the possession of the former, *enures* to the benefit of his landlord to the outside limits of the latter's deed.

4. The fact that the ancestor of the plaintiff sank a shaft for mining purposes, or built a house for laborers who were working in a mine, on the land, would not be sufficient to show title under color, in such ancestor, unless it had appeared, also, that the house had been continuously occupied or the mine regularly worked for seven years.

5. Occasional acts of ownership, however clearly they may indicate a purpose to claim title and exercise dominion over the land, do not constitute a possession that will mature title.

6. Whatever doubt may have been entertained as to the competency of tax-lists, in cases like the present, this Court has decided that proof of listing land for taxation is admissible as an act done in pursuance of law, and under a claim of ownership, though of very slight import as evidence of title; but if the testimony had been admitted the plaintiffs would still have failed to make a *prima facie* case, and the error does not entitle them to a new trial.

This was an Action to Recover Real Property, tried at the August Term of the Superior Court of STOKES County (1889), *Gilmer, J.,* presiding.

* Head-notes by AVERY, J.

In support of their contention, the plaintiffs introduced two grants from the State to Gotlieb Shober, dated May, 1795, one calling for 1,920 acres, the other calling for 600 acres; a deed from Gotlieb Shober to Timothy Pickering, dated July 10, 1795, for about 2,700 acres; a deed from Charles Banner, Sheriff of Stokes, to A D. Murphy, for about 2 428 acres, dated December 13 1815, in which deed there is recited "that the land was sold as the land of Timothy Pickering for taxes due for the years 1811 and 1812, there being no goods or chattels to be found, after due advertisement, according to law, according to Act of Assembly, which prescribes the mode for selling lands for taxes." This deed was submitted as color of title only, upon objection by defendant.

A deed from A. D. Murphy to Thomas Ruffin, for 2,428 acres, dated June 8, 1822; the last will of Thomas Ruffin, devising said land to Anne M. Ruffin, and last will of Anne M. Ruffin, who died since the action was begun, devising said land to the present plaintiffs.

Plaintiffs then introduced John L. Worth, surveyor, and the plots filed by order of Court. Worth's testimony tended to show that the lands described in the complaint were included in the boundaries set out in the grants and deeds aforesaid.

Plaintiffs introduced testimony showing that one Charles Banner was, at one time, agent for Judge Ruffin, and that one Alexander King succeeded him as agent about 1849.

Plaintiffs then introduced a deed, executed by said Banner as such agent, to Glidewell, dated December, 1830, for fifty acres of the land included in plaintiffs' boundaries, as located by surveyor Worth, which lay along the eastern boundary of the tract.

Athy Sizemore, a witness for plaintiffs, testified that he was now the owner, and cultivating said fifty acres, and had been from 1865, when he bought from his uncle, Sanford Sizemore; remembers seeing Glidewell in possession of the same land;

that he also saw Sanford Sizemore in possession of the land before he bought, but did not state what years, nor for how long a time either Glidewell or Sanford Sizemore were in possession; that he owned another tract of the Ruffin land adjoining that tract, and also another adjoining tract, once the land of one Banner, and that witness destroyed the poplar corner called for in plaintiffs' deed, because it shaded the crops cultivated around it.

Plaintiffs then read deposition of Miss Maria Ruffin, in which she testified:

"I lived in Stokes County with my father, on what was known as the 'Ruffin land"; my father moved there in 1852 or 1853, by permission of Judge Thomas Ruffin; I lived there a portion of three years, and we tended lots around the house, and father collected rents from Isham Bennett and Mr. Holland; Alexander King was Ruffin's agent at that time—controlled the land and ejected Isham Bennett; Hinton Holland, Joe Amburn, Anderson Bennett, and John and William Bennett were our nearest neighbors; King, as agent of Judge Ruffin, collected rents of Joe Amburn at the time we moved to the Bennett place, on the Ruffin land; Joe Rowe and Job Amburn lived on the Ruffin land; Rowe left because he could not pay the price demanded by Judge Ruffin, and Amburn left because of some trouble about the rents."

Dr. Swain King, witness for plaintiffs, testified that he is fifty-five years of age, a son of Alexander King; he knew the Ruffin land from earliest recollections; his father was agent for Judge Ruffin a long time; when witness was about fifteen years of age, Judge Ruffin came to witness' father and went on the Ruffin land; they were engaged in mining upon the Ruffin land; sunk two or three or four shafts, and operated till stopped by water; shafts, some of them, fifty feet deep; not having sufficient machinery, they built a house for the miners, and another one over the shafts;

father paid taxes and did what was necessary; Isham Bennett lived on the Ruffin land; Amburn lived there; Rowe also lived on the Ruffin land; Archibald Ruffin lived on the lands with his family; witness' father lived in a few hundred yards of the Ruffin land, and cultivated a small part of it—an acre or two.

On cross-examination, said his father bought part of the Ruffin land from Banner, as agent for Ruffin; Ruffin denied Banner's agency; his father surrendered it to Ruffin; don't know that the mining was done on the Ruffin land; don't know where Ruffin boundaries were; defendant has lived where he now lives (not on land in controversy, but near line) thirty or forty years; his father lived on the Green place, in controversy; and died there as far back as I can remember; one Sizemore settled the Green place, and, at his death, old Overby went into possession, at whose death defendant and his son took possession, and held it ever since.

William King was next introduced, and testified that he was a brother of Alexander King; some men lived on what was said to be Ruffin land; they left; the working for minerals was about one-quarter of a mile inside of the Ruffin boundaries; he saw Ruffin give brother two fifty-dollar bills and tell him to work the mines, and if they found anything they would "go snacks"; they worked the mines some three months, struck water and quit; they sunk three or more shafts, and built houses for the hands over the mines; brother Alexander collected rents from Isham Bennett and carried them home, and paid taxes for Ruffin a number of years; I was a member of a school committee, and by agreement with Charles Banner, as agent for Ruffin, we took possession of a piece of the Ruffin land and built a school-house on it, and we occupied it for twelve months, while I was a school committeeman, and it was so occupied some years afterwards; it was built by license of Charles Banner, agent; afterwards, a deed was made to the school-house; this was before my

105—6

brother became Ruffin's agent; part of the land in contro-
versy was then old settlement.

. Hinton Holland, witness for plaintiffs, testified: "I am
seventy-odd years old; lived first on the mountain, then
near where Archie Ruffin lived; lived near the Ruffin land
thirty or forty years; lived a quarter of a mile from Archie
Ruffin; Maria Ruffin lived with him; Archie Ruffin culti-
vated a small part of the land; Rowe lived on the land;
Archie Ruffin first moved to the Bennett place, on said land,
after Rowe left; moved to the house Rowe left; Rowe lived
there some two or three years; Archie Ruffin lived there
some three years; Amburn lived on the land and owed
rents, and in a controversy between him and Ruffin's agent,
King, I was one of the commissioners to assess the rents,
which we assessed at twenty dollars per year, going back three
years. Archie Ruffin died on the land; his family after-
wards left. The land occupied by Archie Ruffin, Rowe and
Amburn and Bennett was two miles from land in contro-
versy, and near outside line of plot."

Plaintiffs next offered to show by tax-books—not assessor's
list—that the lands had been regularly listed for taxation
by Murphy and Ruffin for a long series of years.

His Honor, upon objection by the defendant, excluded the
testimony, and plaintiffs excepted.

Joe Hill, Deputy Sheriff from 1844 to 1848, testified that
he had collected taxes from Alexander King as agent for
Ruffin.

It was in evidence that the Ruffin lands were in great
part mountainous, and some of it very "rocky," lying mostly
in the Sauratown Mountains.

The plaintiffs rested, and the defendant did not introduce
testimony.

His Honor was of opinion that the plaintiffs could not
recover upon the evidence, and upon this intimation the
plaintiffs submitted to a nonsuit, and appealed.

*Mr. R. B. Glenn*, for plaintiff.
*Mr. C. B. Watson*, for defendant.

AVERY, J.—after stating the facts: The Judge below thought that, in the aspect of the evidence most favorable to the plaintiffs, they had failed, when they rested, to make a *prima facie* case, and hence if they have indicated any combination of facts, to which the different witnesses testified, that would, if true, entitle them to recover, the judgment of nonsuit must be set aside and a new trial granted.

The plaintiffs offered testimony tending to show that the land in controversy was granted to Gotlieb Shober in 1795, and then offered, as color of title, a deed from Charles Banner, Sheriff, to A. D. Murphy, covering the land in dispute, dated December 13th, 1815, with which they connected themselves by the mesne conveyances introduced. Assuming, therefore, that the title was shown to be out of the State, it was only necessary, before resting their case, that they should introduce testimony tending to show that they and those under whom they claim had acquired title by continuous open adverse possession of the land in controversy during the period elapsing between the execution of the conveyance by the Sheriff (December 13th, 1815) and the commencement of the action. *Mobley* v. *Griffin*, 104 N. C., 112. In proving such continuous possession, nothing must be left to conjecture. The testimony must, if believed, show the continuity of the possession for the full statutory period in plain terms, or by necessary implication. Hinton Holland testified that one Rowe lived at a certain house on the land for two or three years, and when he left Archie Ruffin moved immediately into the same house and occupied it for three years, thus showing possession positively for only five, possibly for six, years. The witness, at a later stage in the delivery of his evidence, says: "Amburn lived on the land (he does not say how long, when or where), and owed rents, and in a con-

troversy between him and Ruffin's agent, King, I was one
of the commissioners to assess the rents, which we assessed
at twenty dollars per year, going back three years." It does
not appear whether Amburn occupied a different house and
at the same time when Ruffin or Rowe lived successively
at the Bennett house, or whether he occupied the same house
before or after their residence, and if the same, whether any
interval elapsed between the surrender by the one tenant
and the entry of his successor.

But counsel attempted to gather the necessary inferences
by comparing the testimony of different witnesses as follows:
Dr. Swain King was fifty years old at the time of trial, and
was fifteen when Judge Ruffin went upon the land, and
therefore he must have gone there in the year 1849. Miss
Maria Ruffin, in her deposition, fixes the time of Archie
Ruffin's entry in 1852 or 1853, and says that he remained a
portion of three years. We are asked to conjecture, then,
(there being no positive evidence) that one Isham Bennett
(who, as William King testified, paid rent to his brother
Alexander, as agent of Judge Ruffin) occupied for at least a
year the house into which Rowe moved as soon as Bennett
left, and thus add one year preceding Rowe's entry. We
find from the deposition of Miss Maria Ruffin, that while
her father lived on the land, Hinton Holland, Joe Amburn,
and three men named Bennett, were his nearest neighbors.
Her father moved to the house formerly occupied by Rowe
as stated by Holland. She testified that Isham Bennett
had previously been ejected from the land. Her father
moved to the Bennett house, but we are left to conjecture
whether it was called the "Bennett house" because some
other member of that prolific family had once occupied it,
or whether Isham had been the tenant, and if Isham Ben-
nett gave his name to the place, whether, on his expulsion,
there was a break in the continuity of the possession, which
would be fatal to the claim of plaintiff.

Another suggestion was that possibly the necessary seven years might be made out by supposing that Alexander King rented from Ruffin for a year after he surrendered possession in 1849 of that portion of the land sold by Banner to him two years previously and adding to that year of supposititious possession the previous occupancy for two years under a sale made by Banner, whom Judge Ruffin repudiated as his agent in that transaction. If it be conceded that Alexander King was holding the land sold by Banner without authority, not adversely, but in subordination to Ruffin's title, the insuperable difficulty remains that he was claiming during that period only a definite boundary, not as a tenant, but as a grantee. He stood, at best, in the same relation to the ancestor of the plaintiff as those claiming under Glidewell Sizemore, to whom Charles Banner conveyed fifty acres inside of the boundaries of the tax title in the year 1830, his act, as agent, being in this instance authorized or subsequently ratified. It is a settled principle that one entering upon land under a deed or color of title that definitely describes the metes and bounds of the land conveyed, or purporting to be passed to him, is presumed to prefer claim to all of the land covered by the paper-title under which he holds, and no further. Hence, the possession of Sizemore and his successors, like that of King under the deed from Banner, not being in the name of the whole Murphy tract, did not enure to the benefit of Ruffin. *Davis* v. *Higgins*, 91 N. C., 382; *Lenoir* v. *South*, 10 Ired., 237; *McCormick* v. *Munroe*, 3 Jones, 332; *Staton* v. *Mullis*, 92 N. C. 623.

On the other hand, when one enters upon land as a lessee of a definite portion of the territory covered by the deed under which his lessor claims, the possession of the former enures to the benefit of his landlord to the outside limits of the latter's deed. *Scott* v. *Elkins*, 83 N. C., 424; *Lenoir* v. *South, supra.* In our case, Rowe and Archie Ruffin, as

tenants, represented the ancestor of the plaintiffs, and if continuous possession had been shown by them for seven years it would have matured his title as effectually as if the house had been occupied by him or his servant.

In *Williams* v. *Wallace,* 78 N. C., 354, BYNUM, Justice, delivering the opinion, says: "A possession under color of title must be taken by a man himself, his servants, or tenants, and by him or them continued for seven years together."

The fact that King & Ruffin, as partners, sank a shaft for mining purposes, or built a house for laborers who were working in a mine on the land, would not be sufficient to show title in Ruffin unless it had appeared also that the house had been continuously occupied or the mine regularly worked for seven years. Occasional acts of ownership, however clearly they may indicate a purpose to claim title and exercise dominion over the land, do not constitute a possession that will mature title. *Loftin* v. *Cobb,* 1 Jones, 406; *Bartlett* v. *Simmons,* 4 Jones, 295; *Williams* v. *Wallace,* 78 N. C., 354; *McLean* v. *Smith* (decided at this term).

Whatever doubt may have been formerly entertained as to the competency of the tax-lists in cases like that before us, it is now settled that proof of listing land for taxation is admissible, as an act done in pursuance of law, and under claim of ownership, though of very slight import as evidence of title. *Austin* v. *King,* 97 N. C., 339; *Faulcon* v. *Johnston,* 102 N. C., 269; *Ellis* v. *Harris* (decided at this term).

The Court erred in sustaining the objection to the introduction of the record of property returned for taxation. But if the testimony offered had been admitted, it would still have been the duty of the trial judge to instruct the jury that the plaintiffs were not entitled to recover, in any view of the testimony, and it is not the duty of this Court, because of that error, to set aside the judgment of nonsuit and grant a new trial, when it is apparent that the plaintiffs have not

been injured by the error of the Court, because they would have been in no better plight after than before the introduction of the excluded evidence.

The judgment is affirmed.

Affirmed.