## THE STATE v. JOHN BOYCE.

*Landlord and Tenant—Privity—Estoppel — Evidence — Trespass—Statute.*

The prosecutrix, claiming to be the owner of a tract of land containing about thirty acres, leased seven acres thereof, embraced within fixed lines, to the defendant, and especially forbade him to cut timber from that part of the tract not included in the lease, but the defendant, while his term was subsisting, did cut timber on the land in defiance of prosecutrix's prohibition, and being indicted therefor under § 1070 of *The Code,* on the trial offered to prove that the true title was not in prosecutrix, but in one H., by whose authority he committed the alleged trespass: *Held*—

1. There was no privity, and hence no estoppel, between the prosecutrix and the defendant as to the land not embraced in the lease.

2. The testimony offered to prove title in H., was competent not only for the purpose of showing the good faith of defendant, but as well for the purpose of showing H. was the rightful owner and that the prosecutrix was not.

3. While, ordinarily, the title to land cannot be litigated in criminal actions, indictments under the statute cited are exceptions.

4. The objects and operation of the statute discussed by MERRIMON, C. J., and SHEPHERD, J.

   DAVIS and AVERY, JJ., dissenting.

CRIMINAL ACTION, tried at Spring Term, 1891, of BURKE Superior Court, *Hoke, J.,* presiding.

The evidence tended to prove that in October of 1887 the prosecutrix leased to the defendant for the term of three years seven acres of land, "indicated by certain natural points and objects" that fixed the limits thereof, the same being a part of a larger tract containing thirty-five acres, and he was expressly forbidden to cut any timber outside of the land leased to him. The evidence further tended to prove that the prosecutrix claimed to have title to the land by virtue of a deed from her father, and that the defendant, while his said lease was current, cut certain shingle-blocks upon the land, outside of that embraced by his lease, etc.

The defendant offered in evidence a grant to one Hemphill, embracing the land above-mentioned, "dated in 1857, and to show that, in fact, the said Hemphill was the actual owner of said land and at that time entitled to the possession" thereof, and that the father of the prosecutrix had no title to the same, or any part thereof. He offered further to prove that he was authorized and employed by the said Hemphill to cut the shingle-blocks mentioned on the land, and that he did cut them as his agent and employee, etc.

The Court admitted this "evidence for the purpose of showing that the defendant was a *bona fide* claimant of said land, but would not admit it for the purpose of proving title in

Thomas L. Hemphill, or disproving the title of" the prose-cutrix. The defendant excepted "and proceeded to intro-duce the evidence for the purpose of showing that he was a *bona fide* claimant and acted in good faith," etc. There was evidence tending to show title to the land in Hemphill; that he employed the defendant to cut the shingle-blocks, and that the latter cut them as his employee, etc.

The defendant requested the Court to instruct the jury that if Hemphill was the owner of the land, and the defendant cut the shingle-blocks as his employee and by his instruc-tions, then defendant was not guilty. The Court refused so to charge, and defendant excepted.

The Court instructed the jury that the defendant having taken the lease and entered upon the land embraced by it, "the law would not permit him, during the continuance of the lease and the relation growing out of it, to assume a posi-tion antagonizing the right and title of defendant's lessor, and that so far as the defendant in the case is concerned, they would consider the prosecutrix as the owner of the property, and the defendant having admitted that he cut and carried away the wood and timber from said land outside of the seven acres leased, without the consent of the prosecu-trix, and after being forbidden so to do by her or her agent, his guilt or innocense would depend on the good faith of his claim of right."

The Court further instructed the jury, that if the defend-ant cut the timber under the honest belief that he had the rightful authority so to do, he would not be guilty, etc.

There was a verdict of guilty and judgment thereupon, from which the defendant appealed.

*The Attorney General,* for the State.
*Mr. S. J. Ervin,* for defendant.

MERRIMON, C. J.—after stating the case, proceeded: The defendant is indicted for a violation of the statute (*The Code*, § 1070) which prescribes as to offenses like that charged, that "If any person, not being the present owner or *bona fide* claimant thereof, shall wilfully and unlawfully enter upon the lands of another, and carry off or be engaged in carrying off, any wood or other personal property whatsoever, growing or being thereon, the same being the property of the owner of the premises, or under his control, keeping or care, such person  *  *  *  shall be guilty of a misdemeanor."

It is to be observed that the person who may be charged with the offence thus prescribed, must be a person, first, who is not the owner of the land from which the wood or other personal property shall be taken, or, secondly, a person who is not a *bona fide* claimant thereof. A charge against such owner or *bona fide* claimant cannot be sustained at all. Evidence must be produced on the trial to prove that the prosecutor, or the person charged to have been injured, was the owner of the land at the time of the carrying off of the wood or other personal property—that he was at least then in possession thereof by himself or another, claiming it as his property. Surely, then, the defendant has the right to show, first, if he can, that he is the owner of the land, and therefore not subject to such charge. How can he do this but by showing in some proper way that himself is the owner? He has the clear right to show title in himself if he can. And, secondly, if he cannot show perfect title, he has the further right to prove facts which show that at such time he was the *bona fide* claimant thereof. The offence created is of such nature as to render it necessary for the defendant, and to allow him, to show title to the land in himself, or to prove that he was the *bona fide* claimant of the same. The purpose of this statute is not to prevent a simple trespass on the land affecting merely the possession, but to

prevent the taking of wood and other personal property as prescribed, that belongs to the owner of the land, or of which he has the control, care and keeping, from the land of which he is the owner in some way. It is no part of the purpose of the statute to prevent the real owner, though not in possession, from asserting his rights to have possession, control and benefit of it in any lawful way within his power, or to prevent such owner out of possession from taking it in any proper way, and taking from it as he may see fit wood and other property that may belong to him  The chief purpose is to prevent persons who have no right or title to the land, and no *bona fide* claim to it, from carrying from it wood and other personal property not their own.  This statute (Acts 1866, ch. 60) was first enacted soon after the late civil war, to prevent and suppress a very common public grievance then prevailing, which is pointed out in *State* v. *Crawley*, 103 N. C., 353.

An essential quality of the offence so prescribed is, that it shall be committed by some person *other* than the owner of the land or a *bona fide* claimant thereof, and that it shall be done wilfully and unlawfully, and it must be so charged in the indictment.  Hence, if the owner of the land sends his servant or employee on the same to cut timber and take the same off, such servant would not be guilty of the offence. In that case, he would not take it wilfully and unlawfully in contemplation of the statute. This is so because the owner had the right to send his servant to cut and take the timber from his own land.

In this case the Court instructed the jury that the prosecutrix, and not Hemphill, " was to be regarded as the owner of the property ; notwithstanding this, defendant still could not be convicted if his claim of right was made in good faith," etc., and the evidence of title to the land in Hemphill was received only as tending to show such good faith on the part of the defendant.  In this there is error.

The evidence of title in Hemphill should have been received, not simply for the purpose of showing good faith of the defendant, but as well for the purpose of showing title to the land in Hemphill. If the latter was the owner of the land, as the evidence in one view of it tended to prove, then the defendant was not guilty, because he cut the shingle-blocks under the direction of and for such owner, and in this view no question of good faith could arise. As we have seen, the defendant had the right to prove that the prosecutrix was not the owner of the land, that Hemphill was, at the time he cut and took the timber, and he could show such facts by producing evidence of his title. He could not make such defence otherwise. In *State* v. *Crosset*, 81 N. C., 579, the defendant was indicted under a somewhat similar statute (*The Code*, § 1120), and he was allowed to show title to the land in question in a railroad company, under and for whom he did the acts for which he was indicted. See also *State* v. *Bryson*, 81 N. C., 595; *State* v. *Crawley, supra; State* v. *Winslow*, 95 N. C., 649.

If Hemphill had been indicted with the defendant, or alone, is it not clear that he might have shown that the land was his, and he thus had the right to cut the timber? And if he should show title, would not this be a good defence for himself and his servant? How could he show that the land was his, he being out of possession, but by producing evidence of his title? Can it be possible that he might, under the statute, be convicted for cutting and taking his own timber from his own land? It is said that he might be excused in that case upon the ground that he was a, *bona fide* claimant. The jury might not believe he was such claimant. If he was the owner of the land he could defend himself successfully without being exposed to the hazard of showing what the jury might or might not regard as a *bona fide* claim; he had the right to place his defence upon the higher and safer ground that he was the owner of the land. If he showed

title it was the duty of the Court to instruct the jury to render a verdict of not guilty. In that case the law concluded that he had the right to cut the timber because it was his own, he was not simply a *bona fide* claimant, he was the absolute owner.

It is conceded that, ordinarily, the title to land does not come in question in criminal actions, but the statute creating the offence charged here is such, in its nature and purpose, as in possible cases like the present one, to make the guilt or innocence of the defendant depend upon the title to the land from which the wood or other property may have been taken. If the act charged was done by the owner thereof, he could not be guilty, nor would he be if, being out of possession, he should go upon it and cut and carry away timber. The statute does not forbid the mere going upon the land, it does not prohibit the simple invasion of the prosecutor's *possession* thereof, it only forbids persons, not the *owner* or the *bona fide* claimant thereof, to carry from it wood or other property. The owner being out of possession of the land could not, in the nature of the matter, defend himself as *owner* otherwise than by showing title. *State* v. *Roseman*, 66 N. C., 634; *State* v. *Hanks*, *Ibid*, 612, and the cases cited, *supra*.

The evidence tended to prove that the prosecutrix was in possession and the owner of the land from which the defendant removed the shingle-blocks mentioned, but it did not go at all to prove that he was her tenant as to that part of the land from which the blocks were taken. It only went to prove that he was her tenant as to certain seven acres thereof particularly described by natural boundaries of the larger tract. If it be granted that the defendant could not be allowed, in a case like this, to deny that the prosecutrix was the owner of the seven acres as to which he was tenant, he was not so concluded as to other parts of the land, including that from which he cut the shingle-blocks, because as to

that he was not her tenant. As to that there was no agreement or relation of any nature that concluded him for any purpose, or prevented him from denying her title thereto. He might admit and agree that the prosecutrix was the real owner of the seven acres that he leased from her, but he might also deny that she had any title or right to the balance of a tract she claimed to be hers. The evidence was direct that the defendant leased certain seven acres ascertained, and he was admonished not to cut timber elsewhere. *Kissam* v. *Gaylord,* 1 Jones, 294; *Fisher* v. *Mining Co.,* 94 N. C., 397, and the cases there cited.

It is insisted that the possession of the defendant of the seven acres of land so leased to him was that of his landlord, the prosecutrix, and that such possession extended to and embraced that of the whole tract claimed by her, and therefore the defendant is concluded or estopped to deny the title of the prosecutrix to the land situate beyond and outside of the land embraced by the lease. Such possession did so extend as to the prosecutrix as to wrongdoers, but it did not as to the defendant. He had no possession or right or benefit of possession beyond the boundary of the land leased to him; nor was there any obligation resting upon him arising from the contract of lease, or by implication of law, to hold possession of any land beyond such boundary. There is no reason of policy, nor is there principle or authority that warrants such contention. *Lamb* v. *Swain,* 3 Jones, 370; *Scott* v. *Elkin,* 83 N. C., 424, and the cases last above cited.

The defendant is entitled to a new trial.

SHEPHERD, J. (concurring): On the trial the defendant offered to show that he acted under the authority of one Hemphill, and that the said Hemphill was the owner of the land upon which the alleged trespass was committed. The Court excluded this testimony except for the purpose of

showing the good faith of the defendant, and the jury were instructed that they could only consider it in that view. The defendant was not satisfied to have his liberty endangered by what the jury might capriciously find upon the question of good faith, and insisted that he had the right to prove and rely upon the actual legality of his conduct.

Ordinarily, on the trial of indictments for the disturbance of the possession, such as forcible trespass and forcible entry, and also for the removal of fences, injuries to buildings and similar cases, the title to land is not permitted to be litigated, although, in some instances, the practical application of the principle has not been entirely free from difficulty. The rule, however, does not grow out of the doctrine of estoppel, but is founded on the reason that the offence is treated as one against the actual possession, which possession is regarded as sufficient evidence of ownership. But where, as in this case, there is no actual possession on the part of the prosecutrix and no evidence of title, or the right of possession in her beyond the possession of the defendant himself, it is not easy to understand how, even in the cases mentioned, a conviction could be sustained.

But the statute before us is of quite a different character, and by its very terms the title is necessarily put in issue. It requires that the person indicted must not be " the *present owner* or *bona fide* claimant of the land," and that the property carried off must be " the property of the owner of the premises or under his control, keeping or care." If the act be done with a felonious intent, it is larceny, and if without such intent, it is a misdemeanor. Considering the peculiar wording of the statute and its highly penal character, and especially in view of the fact that under it one may be indicted for larceny (in which case it is always competent to show the real ownership), it is not seriously contended that the defendant may not show title in himself or in those under whom he claims.

This very important right, however, is controverted in the
present case by reason of the application of a rule of prac-
tice known as estoppel, and which has hitherto been con-
sidered as peculiar to the trial of civil cases.    To say the
least, its application to criminal trials of this character would
be unusual, but conceding, for the sake of the argument, that
it obtains in all its rigor on the criminal side of the docket, I
am wholly unable to understand how it applies to the pres-
ent case.    If, as contended, the estoppel grows out of the
relation of landlord and tenant, how is it possible that the
tenant can be convicted of an unlawful entry upon his own
premises?

"The tenancy does not exist until there has been an entry
by the tenant, and when the entry is made," says Justice ASHE,
in *Barneycastle* v. *Walker*, 92 N. C., 198, "the estate is abso-
lutely vested in him (the lessee) as if by grant for the period
of time mentioned in the lease," and it is there decided that
he may maintain an action of tort if the landlord enter and
dispossess him.    So, too, he may indict the landlord if he
enters and removes a fence from the premises (*State* v. *Piper*,
89 N. C., 551), and on the other hand, the tenant is not indict-
able if he tears down or injures a building on the same.
*State* v. *Mace*, 65 N. C., 344; *State* v. *Whitener*, 92 N. C., 798.

This is too plain to require the citation of authority, but
the difficulty seems to have been surmounted on the argu-
ment by treating the defendant as a tenant for all of the pur-
poses of a criminal prosecution, and stripping him of that
character for the purposes of his defence.    This position
seems to be based upon the idea that the primary object of a
contract of lease is to build up the constructive possession of
the landlord within the boundaries of some, perhaps, unreg-
istered or unknown deed under which he claims, and that
the supposed inconvenience resulting from an interruption
of this mere incident is to override every other consideration
and to work a material change in what are everywhere

regarded as the principal and essential features of such a contract.

The defendant never leased the land upon which the alleged trespass was committed, but it is argued that inasmuch as he leased a specific part of the same tract, and as his actual possession of this part was a constructive possession of the whole, he is thereby estopped to deny the landlord's title to that portion which is outside of the boundaries of his lease. Now, it is quite clear that the estoppel of a tenant is founded only on the possession, and that this possession must be actual is evident from the fact that the relation is not established until entry, and it must of course be the actual possession which the "*landlord delivers.*" Taylor's Landlord & Tenant, § 706. The possession must necessarily be co-extensive with the estoppel, and if the estoppel works against the defendant as to the outside land, there can be no escape from the conclusion that the possession must also accompany it and protect him from being treated as a trespasser. To hold otherwise would offend the principle of mutuality which lies at the foundation of every estoppel. The logical outcome, therefore, of the argument is that the defendant cannot be indicted at all, no matter how frequent and destructive his depredations may be. Notwithstanding such an anomally, it is argued that he should be convicted as a trespasser, and evils are suggested as likely to ensue upon a failure to hold him to criminal responsibility.

The only way to punish such offenders under the statute is to follow the principle laid down in the decisions of this Court, the works of eminent text-writers and other authorities, and these abundantly establish that, although the possession of a part by a tenant will give constructive possession of the whole to the landlord, yet, as between the landlord and tenant, as to the outside land, there is no privity, and without privity there can of course be no estoppel. This is directly sustained in *Scott* v. *Elkins*, 83 N. C., 424, and also

*Lamb* v. *Swain*, 3 Jones, 370.   So in Taylor on Landlord and Tenant, § 707, it is stated that " the estoppel of the lessee does not extend to other lands of the lessor not included in the demise;" and in Lawson on Rights and Remedies, it is laid down that " accepting a lease for part of a tract does not estop the tenant from denying the landlord's title to the residue of the tract." See also *Wyoming Coal Co.* v. *Price*, 81 Pa. St., 156 ; *Wilborn* v. *Whitfield*, 44 Ga., 51 ; *Pederick* v. *Searle*, 5 Serg't & Rawle, 236.

In opposition to these well settled principles there is, I think, an entire absence of authority.   The cases cited to the effect that where a tenant occupies, in connection with his tenancy, lands outside of the lessor's, he is presumed to hold for the benefit of his landlord, do not, in my opinion, bear upon the question.   It is a mere presumption, usually raised between the landlord and others, and may always, says Mr. Washburn, be rebutted, 1 Vol., 590.

In reference to the evils suggested by a contrary ruling, the answer may be found in the language of RUFFIN, C. J. (*Lenoir* v. *South*, 10 Ired., 239), that " the law cannot suppose that an owner will not look to the condition of his property " and expel intruders.   There is no more reason why he should not guard against the encroachments of his tenants than those of his neighbors or others.   Again, it is not true that a tenant can attorn and give a stranger the benefit of his constructive possession, for just so soon as he steps beyond the boundaries of his lease he may be treated as a trespasser, indicted under this very statute and expelled from the premises.   The constructive possession by reason of his legitimate occupancy enures to the benefit of the landlord, and is added to the restored possession in the computation of time in ripening the title   Furthermore, if the tenant has such a possession of the outside land as will estop him, the landlord, as I have remarked, will not only be prevented from indicting him as a trespasser, but it is not easy to understand how he

can deprive him of the possession by a civil action or otherwise, until the expiration of the term.

Apart from all this, and independent of the principle of estoppel and possession—its necessary attendant—I cannot see how the defendant can be convicted, if there be, as is contended, any privity as to the outside land. It will be observed, that in order to sustain the indictment, it was necessary to show that the prosecutrix was the owner of or entitled to the possession of the land upon which the alleged trespass was committed. If there was any evidence of this (and there seems to have been none except the statement that the father had conveyed it to her) it was not submitted to the jury, and his Honor seems to have held that such proof was unnecessary on the ground that by reason of the defendant's possession of a part, she was in the constructive possession of the whole. The case was made to depend, so far as the prosecutrix's ownership was concerned, solely upon the possession of the defendant. Now, as I have before stated, if a constructive possession is sufficient to show title in order to convict the defendant, he surely ought not to be deprived of it for the purpose of his defence. But the difficulty is still more apparent when we consider that the possession of a part is not technically the constructive but the *actual possession* of the whole; for, says RUFFIN, C. J., "constructive possession is such a possession as the law carries to the owner by virtue of his title only, there being no actual occupation of any part of the land by anybody. * * * But when the owner is actually possessed, by residence, for instance (and I will add, or by his tenant), of a part of a tract of land, he is *actually possessed of the whole.*" *Graham* v. *Houston*, 4 Dev., 237. So, according to the principle invoked, we have the case of a person being convicted of an unlawful entry upon land of which he is in the actual lawful possession. *Indeed, it seems to be conceded that he is not a trespasser*, and yet it is urged that he may be indicted as such. The Court

is not prepared to make a departure which introduces a rule that deprives the landlord of swift and efficient remedies against the tenant who trespasses upon adjacent unleased land, and, besides all this, is not only opposed to our own decisions, but the standard text-writers and other authorities on the subject. The Court is of opinion that, as between the landlord and tenant, there is no privity as to the outside lands where the leased premises are specifically defined by metes and bounds, and that as to such outside lands the defendant may be treated, under the statute, as any other trespasser; and if he fails to establish his defence by showing title or good faith, he may be convicted and punished as such.

For these reasons, I am of opinion that there was error in applying the doctrine of estoppel, and that there should be a new trial.

DAVIS, J. (dissenting): I am unable to concur in the opinion of the Court. It is not pretended that the defendant was the owner of the land, and whether he was a *bona fide* claimant was a question for the jury. I think his Honor properly admitted the evidence as to Hemphill's title only as competent to show the *bona fides* of the defendant, and excluded it for the purpose of trying, in this criminal action, the question of title between the prosecutrix and Hemphill. If the defendant was acting *bona fide*, it was sufficient for him to admit it for the purpose of showing this fact. Good faith to his landlord would not permit him to conspire with an adverse claimant of the land to enable that claimant to try indirectly the title in a criminal prosecution. If he was acting in good faith, it made no difference whether Hemphill was the owner or not, he could not be convicted under the statute; and so, if he was not acting in good faith, but collusively with an adverse claimant of the land, not in possession, that would not, in my opinion, protect him against

the prosecution of the claimant in possession, and it is not denied that the possession was in the prosecutrix. The fact that the defendant was unwilling to rest his defence upon the *bona fides* of his claim, but sought to establish Hemphill's title, was a circumstance that justified the jury in finding that he was not acting *bona fide.* I am unable to see what possible service the deed to Hemphill could be to the defendant, except to show the *bona fides* of his claim, and for this purpose his Honor admitted it, but the defendant was not satisfied with that. However willing he seems to have been to act collusively with Hemphill against his landlord, it is perhaps to his credit that he was not willing to go so far as to perjure himself by swearing that he was a *bona fide* claimant. If it be said that there is no evidence of fraud and collusion, I answer: the facts seem to me to warrant the conclusion of fraud, and the jury were very evidently of that opinion, or they would, under the charge of his Honor, have rendered a verdict of not guilty.

AVERY, J. (dissenting): The prosecutrix demised to the defendant for the term of three years, by verbal agreement, seven acres of land, designated by a well defined boundary line, of a tract of thirty-five acres held by her under one deed. The prosecutrix pointed out to the defendant, when the contract was made, not only the boundaries of the demised premises, but those of the tract of which it constituted a part, and at the same time she forbade him from cutting any timber outside of the limits of the seven acres. Subsequently, and during the term, the defendant did cut down and carry away trees on the thirty-acre-tract outside of the demised premises, and, when indicted (under § 1070 of *The Code*), offered in evidence a grant to one Hemphill, dated in 1857, embracing both the land leased to him and that on which he cut the timber trees for shingle-blocks, and also parol testimony tending to show that he was authorized

109 — 48

and. employed by said Hemphill to cut down the trees. The Court admitted the testimony for the purpose of showing that he acted under a *bona fide* claim of right. The defendant excepted to the refusal of the Court to allow the jury to consider the said grant as evidence of title in said Hemphill, and of right on the part of the defendant to enter as his servant, employee or lessee.

The appeal raises two que-tions—

*First.* Is it competent for one indicted for a trespass under this statute, to prove title in himself or his lessor by exhibiting a chain of title deeds, or does the issue of his guilt or innocence depend rather upon the holding of actual or constructive possession by the prosecutor on the one hand and his own good faith on the other?

*Second.* Is the lessee of a definite portion of a large tract of land, held by his lessor under the same title deed under which the latter holds the demised premises, estopped during his term from setting up against the lessor an adverse title to any part of the territory covered by such deed?

If the law should furnish an affirmative answer to the second interrogatory, this case would be disposed of.

Though feudal tenures have been long since abolished. the reciprocal duties of landlord and tenant and the relations which the law recognizes that they sustain to each other, had their origin in part in that system, and are not easily understood without recurring to its principles. Fealty was, in the middle ages, another name for fidelity. A tenant for years was sworn to be faithful and to render the customs and services due to his lord. 1 Coke on Lit., 67b. Where one held land of a superior, the obligation of the lord was to protect the tenant in his immediate possession; the corresponding duty of the tenant was to defend the right of his lord, not simply to the fields and woodland within the boundaries of the land in his actual possession and under his immediate care, but to the outside limits of his lord's estate in which it

was located.  2 Bl., 46.  Mr. Chitty (Note 2 Bl., 46) says,
that a man could not free himself from this feudal depen-
dence except by renouncing all claim to the land which he
was holding and surrendering the possession to his lord.   In
that early day, when the system prevailed in its original
form, the suggestion that a tenant could step over the line of
his actual possession, but still within the bounds of the land
of the lord under whom he held, and under a lease from a
rival lord of a neighboring manor destroy a grove in sight of
his home, would have cost the tenant his head, and after the
destruction of such tenures would have been considered a
breach of good faith and inconsistent with the subsisting
relation to his landlord.   A man could not be a faithful vas-
sal and fight under two banners.   A servant who, when he
was placed in charge of a castle, surrendered a bridge, cov-
ered by the fire of his archers on the road by which an enemy
was approaching it, would have been thrown from the bat-
tlements as a traitor.   It is because the rule which forbids
the tenant to dispute the title of his landlord had its origin
in feudal principles, that text-writers agree in saying it is not
an estoppel growing out of a contract.   One of the evidences
that it originates in the idea that there is an obligation on
the part of the tenant, inseparable from the very relation he
sustains, to be faithful to his landlord, is found in the fact
that it is often enforced against persons not capable of con-
tracting.   *Wilson* v. *James*, 79 N. C., 349.   Hence, it is often
said that the law, in order to punish fraud (which is, in all
its forms, but a species of bad faith), imposes upon those who
were slaves, infants or *femes covert* when a tenancy began, the
condition that they will not be permitted to deny the title of
him under whose permission they acquired possession until
they shall have surrendered the premises to him.   2 Kent's
Com., 240.
     We find that a discriminating text-writer (Sedgwick and
Wait, T. T. L., § 352) in laying down the rule that a tenant

must ordinarily surrender possession before he can deny the title of his landlord, says: "If the rule were otherwise, no person would be safe in parting with the possession of his land. * * * * If any defect existed in the chain of his title, or the muniments of title had been lost or destroyed, or the witnesses who were conversant with the facts affecting it had died or were absent from the country, the owner would be practically precluded from letting the property. The possession of land by a servant, a tenant or vendee (certainly until the whole of the purchase-money is paid) enures to the benefit of the master, landlord or vendor, in the absence of a counter adverse possession upon some part of the tract, to the outside limits of the deed under which such master, landlord or vendor claims. *Brown* v. *Brown*, 106 N. C., 460; *Ruffin* v. *Overby*, 105 N. C., 85; *Scott* v. *Elkins*, 83 N. C., 424; *Williams* v. *Wallace*, 78 N. C., 354; Wood on Lim., § 260. Such is the privity between persons standing in these relations to each other, that if one who has been a tenant of a few acres of a large tract held by his landlord, takes a bond for title and contracts with the latter to pay a certain price for the land demised until the purchase-money is paid, if not until the land is conveyed to the vendee, the possession, both as tenant and vendee, enures to the benefit of the vendor to the outside boundaries of the deed under which he holds. But after the execution by the vendor to the vendee of a deed for the definite boundary contracted for (if not upon the performance of the condition of the bond by payment of the whole of the purchase-money), the possession becomes adverse to the vendor as well as to all others. *Ruffin* v. *Overby, supra;* Wood on Lim., §§ 259, 260.

If there is no other adverse possession within the limits of the landlord's deed, the tenant holds for his benefit constructive possession of the whole boundary. Wood on Lim., §§ 259, 260; *McLean* v. *Smith*, 106 N. C., 172. The actual possession of Boyce was confined to seven acres, and had he

occupied the seven acres without trespassing outside for seven years continuously, it would have enured to the benefit of the prosecutrix under her deed for thirty-five acres from her father, and have matured her title, (supposing the title to have been out of the State) against all persons not laboring under some disability. *Ruffin* v. *Overby* and *Scott* v. *Elkin, supra; Lenoir* v. *South,* 10 Ired., 237. If another person had entered claiming adversely to the prosecutrix on any part of the thirty-five acres, then the result would have been the constructive possession of the unoccupied land covered by both titles, supposing both to be seated upon the lappage, would have been drawn by the older title to the occupant holding under it. *McLean* v. *Smith, supra.* If the defendant Boyce was at liberty to act under the authority of Hemphill in cutting timber trees, so that the act itself would amount to an actual adverse possession for the purpose of maturing title, he might, upon the same principle, under a lease from Hemphill, executed after his entry under the prosecutrix, have enclosed a field and thereby *have changed the nature of his own constructive possession by an attornment,* while occupying the land under his old lease, and thus have placed himself in the attitude of holding two adverse and conflicting possessions at the same time. The supposed case would present an unprecedented legal problem that would be difficult of solution, unless we extended the benefit of the estoppel on the tenant to the limits of the possession held constructively for the landlord's benefit instead of limiting its application to the demised premises. The prosecutrix could, as between herself and Boyce, restrict his right to cut timber to the seven-acre tract, and forbid his trespassing beyond its boundaries, without depriving herself of the benefit of the constructive possession, which grew out of his occupancy as a tenant of any part of the thirty-five-acre tract, and extended to the whole of that tract, until some other person entered and took actual possession by title para-

mount within its boundaries. *Scott* v. *Elkins*, 83 N. C., 426; *Ruffin* v. *Overby, supra; Brown* v. *Brown, supra.* It would be a legal anomaly if the tenant himself could destroy the privity existing between himself and the prosecutrix, divest the benefit of constructive possession out of her and transfer it to another claimant by accepting a lease outside of the demised premises, but within the boundary of his lessor's deed under which he is occupying. And yet, entering as servant and employee of the adverse claimant, his possession, if he is not estopped, would be equivalent to an actual possession by such claimant in his own person. *Williams* v. *Wallace supra.* A man takes actual possession and acquires with it the benefit of constructive possession by the occupancy of his vendee, his tenant or his servant to the same extent as if he had himself entered upon the premises. *Qui facit per alium, facit per se.* In *Brown* v. *Brown, supra,* Justice DAVIS, delivering the opinion, says: "A vendee in possession under a contract of purchase *is in privity with* his vendor, and is entitled to have the time when he held possession under his vendor added to that after receiving his deed in determining whether colorable title has matured into a perfect title by possession." He further says: "That up to the time of taking the deed the vendor sustains the same relation to the vendee as if his contract with the latter had been for the lease instead of the purchase of the premises." Tiedman R. P., § 181. Supposing that Hemphill had the older title, which included within its bounds the whole thirty-five-acre tract conveyed to the prosecutrix by her father, and that the term had been for seven years instead of three, then it is clear that by an occupancy for the entire term as her tenant, her colorable title to the whole boundary conveyed by her father would be matured againt Hemphill. *Green* v. *Harman,* 4 Dev., 158; *Williams* v. *Miller,* 7 Ired., 186. But at the very moment when a tenant or servant of Hemphill acquired actual possession on the lappage, then

*eo instanti* the benefit of Boyce's occupancy would have been
restricted to the actual *possessio pedis*. *McLean* v. *Smith*, 106
N. C., 176; Wood on Lim , § 259. If Boyce was not estopped
from defending under the title of Hemphill when indicted
for a trespass not amounting to an actual possession, it would
inevitably follow that he would not have been estopped from
entering as the tenant of Hemphill and clearing a field just
across the line of the seven acres, but within the limits of
the thirty-five-acre tract. . Yet the effect of entering into
such relation with Hemphill would be to transfer to him
the constructive possession, not only of all the tract of
the prosecutrix outside of the seven acres, but all inside
of the demised premises, except so much as he had actually
enclosed. If he could become the tenant of Hemphill
at all without surrendering his possession under the pros-
ecutrix, his tenancy must carry with it all the benefits that
the law attaches to such a relation, and in the case supposed
would enable his new landlord, by virtue of it, to deny his
possession under the former lease *in toto* and confine its ben-
efits to the prosecutrix to his actual *possessio pedis* at the
place of his original occupancy. If he could become his
tenant at all, then, after occupying under a lease from
her for six years and three hundred and sixty-four days, he
could build for Hemphill a hog pen just outside of the seven
but within the thirty-five acres, and restrict his lessor's pos-
session through him to the enclosure made for her. *Lenoir*
v. *South*, 10 Ired., 237; *McLean* v. *Smith, supra.* There is no
middle ground, the estoppel must be co-extensive with the
constructive possession of the tenant and not confined to the
limits of the demised premises, or we must concede the right
of the tenant in a case of lappage to take a new lease of the
holder of the older title and enable his new landlord to main-
tain what he is estopped to say, that his original lessor had
no title inside of the premises demised by her except to the
extent of the territory actually occupied. Suppose that a

civil action had been brought by the prosecutrix after the
tenant had held over as her tenant from year to year for
seven years on the seven acres, against the same tenant for a
trespass in clearing and cultivating under a lease from
Hemphill just outside of the boundary of the seven acres,
and Hemphill had been allowed to defend as landlord? Upon
proof that Boyce entered into possession outside of the boun-
dary of the seven acres on the three hundred and sixty-
fourth day of the seventh year, he would be made tenant of
both parties   By his last adverse entry his possession would
become adverse to himself, and the constructive possession
that he had held for nearly the statutory period would, by
his own act, pass out of him in one capacity and vest in him
in another capacity.   Then, if he could take a lease from
Hemphill at all, he must take it with all of its incidents,
including the divesting of his actual possession in all of the
seven acres even, not under fence, out of the prosecutrix and
vesting it, as well as the constructive possession outside, in
Hemphill, the holder of the older title.   An occupancy by
Hemphill, if he had the older title, must have drawn the
constructive possession out of the prosecutrix, except where
she had actual possession.   If Boyce could occupy as his
tenant at all, it must *ex necessitate* have the same effect as the
entry of Hemphill.   If any Court of Appeals, which recog-
nizes the English common law as the foundation of its doc-
trine of tenures, has ever admitted that a tenant, by his own
act, could hold adversely to himself and thereby deprive his
original lessor of a benefit incident to his tenancy, even inside
the limits of his original lease, I have been unable, by dili-
gent effort, to find it.   If such shifting of fealty could have
been considered as treachery and punished with death in
the middle ages, the tolerance and encouragement of the act
now, by giving it the sanction of the law, indicates, to my
mind, that we have not improved upon the ideas of our rude
and uneducated ancestors in enforcing fidelity in one of the

most important relations incident to civilized society. Our tenure in North Carolina, it is true, has been compared to that of tenants by socage, because military service is not incident to it. But there can be no doubt that the rule of honest dealing, which bound every tenant to be true to his landlord, and gave the latter all of the actual benefits incident to the tenancy till the relation ceased, is one of the features of our system that had its origin in the exalted ideas of mutual fidelity due from the one to the other which extended to every species of tenure in the middle ages.

Estoppels operate between parties and privies. If Boyce had died during the term, his heirs at law would not have been allowed to deny the title of the prosecutrix to the demised premises without first surrendering possession to her, and neither he nor they can be allowed to attorn to a stranger as to any land of which the tenancy gives them constructive possession, without opening the door for fraud upon the rights of the landlords. This proposition would seem to be familiar learning, but the heirs of Boyce would occupy the same relation that he sustains to the prosecutrix. Suppose that they were holding over, and when she was on the eve of instituting summary proceedings to eject, they should suddenly go outside of the seven acres and enclose a field under a lease from Hemphill? Before taking that lease they would be estopped from denying her title, and certainly could be ejected from the whole seven-acre tract. But after taking the lease under Hemphill, the holder of the older title, they would hold under him up to their enclosure, and therefore the estoppel would be limited by their own act to the *possessio pedis*, instead of the boundary of the lease. We cannot alter the rule to meet this case. If they would hold at all, they would, as the tenants of Hemphill, stand in his shoes and hold with all the incidents attaching to his occupancy.

In the case already supposed, that the land of the prosecutrix was entirely covered by a paramount title of Hemp-

hill, it would be a manifest fraud upon the rights of the original lessor if Boyce should take advantage of his lessor by transferring the benefit of constructive possession. The English Courts have gone a step further than any Court has done in this country, and have established the principle— which discriminating text-writers seem to think correct— that where a lessee occupies, in connection with his tenancy, land not only outside of the demised premises, but outside of his lessor's boundaries, and by such possession acquires title, the presumption is that he occupied for his landlord, and the benefit of the possession enures to the lessor. Tiedman R. P., § 199; *Lloyd* v. *Jones,* 15 M. & W., 579; *Harrison* v. *Murrill,* 8 C. & P., 327; *Lisburne* v. *Davies,* S. B. C. C. P., 259; *Lewis* v. *Reese,* 6 C. & P., 610. The lease carries with it an implied covenant on the part of the lessor for the quiet enjoyment of the demised premises during the term. It is equivalent to a stipulation that the lessee shall not for the time be disturbed by act of the landlord or the paramount title of a stranger. Tiedman on R. P., § 187; 1 Smith's L. C., 185.

The reciprocal obligation resting upon the lessee is, that he shall not, by his own act, in attorning to the holder of the paramount title even as to the land over which his lessee acquires constructive possession by his occupancy, reduce the area over which the landlord's possession extends to the limits of his own actual enclosure, and thereby make it impossible for the landlord to perform his contract for quiet enjoyment to the outside boundaries of the premises described in the lease.

Being in privity with the lessor, there is a mutual obligation which estops the lessee from doing an act inconsistent with the covenant to which the former is bound to him by the implication growing out of the tenancy. A sub-lessee is also in privity with the original lessor, and can hold him to the implied covenant for quiet enjoyment. Is there no cor-

responding restriction upon a sub-lessee, which prevents him from putting both his immediate lessor and the landlord to disadvantage by entering into an agreement with the holder of the paramount title as to land outside of the demised premises, but covered by the landlord's deed, under which he claims the land demised? There is no force in the suggestion that what has been said is in conflict with the principle stated in *Scott* v. *Elkin, supra.* The lessee Boyce, as in that case, was " only in (actual) possession of the part embraced in the contract" (the seven acres), and was positively forbidden, in fact, to use timber outside of it but within the boundaries of the deed under which the prosecutrix claimed, while he held constructive possession for her to the outside limit of that deed.

This is the application of the doctrine laid down in *Scott* v. *Elkin, supra,* to our case. But we are confronted with the further question, not whether the right of the tenant by virtue of the lease extends, as between him and his landlord, outside of the demised premises, but whether he is estopped from shifting the benefit of the constructive possession incident to his tenancy by accepting a lease from the holder of the title paramount against whose claim he holds his landlord bound to protect him. I think that the defendant was estopped from showing title paramount in Hemphill as evidence that he was not a trespasser, and that he had no reason to complain of the liberal ruling of the Court that the jury could consider the deed offered in passing upon the question of good faith.

If, in this particular case, the defendant is precluded by his relation as tenant from offering evidence of title paramount, it would be unnecessary to pass upon the vexed question whether in the trial of all indictments under section 1070, it is competent to show title in another than the prosecutrix, whether the title becomes material only in certain peculiar cases, or whether the guilt or innocence of a person

charged depends in all cases upon proof of actual or constructive possession.

As to the other point in the case, I fully concur with my brother DAVIS, and deem it unnecessary to add anything to what he has said in support of his view.

*Per curiam.*                              Error.