J. L. WORTH v. G. SIMMONS.

*Action to Recover Land—Tax Deed—Color of Title—Possession Under Color of Title—Constructive Possession—Evidence— Possession of Grantee No Evidence of Grantor's Possession of Land not Included in the Deed.*

1. A description of land in a petition for partition as follows: "Thirty three or four thousand acres of land situate in the county of Surry, between Rockford and the Blue Ride," is too vague and indefinite to be aided by parol evidence.

2 Prior to the Revenue and Machinery Acts of 1887, a Sheriff's deed under a sale for taxes was (without other evidence) only color of title and not effective, unless aided by open, notorious and continuous possession for the statutory period.

3. While the possession of a tenant of a parcel of land within a general boundary of land belonging to his lessor, is in law, the possession of the lessor up to the boundaries contained in the latter's deed, it is different as to the possession of a purchaser of such parcel, since the vendee, while deriving title from his vendor, does not hold possession

WORTH v. SIMMONS.

under him, and his possession extends no further than the boundaries included in his own deed.

4.  Where, in the trial of an action for the recovery of a parcel of land admitted to be within a boundary described in a tax deed executed before 1887, there was no actual possession under such tax deed shown by the plaintiff, or those under whom he claimed, deeds executed by the grantee in such tax deed and by his heirs and by a Commissioner in partition proceedings, after the death of such grantor, for certain parcels of land admittedly within the boundary of the tax deed, were inadmissible, as well as the possession of the purchasers under such deeds, to show the possession of plaintiff, or of those under whom he claimed, of any part of the tax deed boundary outside of the lands included in the deeds so offered.

CIVIL ACTION, tried before *Norwood, J.,* and a jury at Spring Term, 1896, of SURRY Superior Court.   At the close of the testimony (which is summarized in the opinion of the Court) his Honor intimated that the plaintiff could not recover and thereupon the plaintiff submitted to non-suit and appealed.

*Messrs. Glenn & Manly* and *A. E. Holton,* for plaintiff (appellant).

*Messrs. Watson, Buxton & Watson,* for defendant.

FURCHES, J.:  In 1795 and 1796 one Gotlieb Shober took out grants from the State covering over 40,000 acres of land lying in Surry County.  Soon thereafter he sold and conveyed this land to Timothy Pickering.  In the year 1813, one Wright sold the same for taxes and one James McCraw became the purchaser, and Wright, as Sheriff, made him a deed therefor.  Between 1813 and 1836, McCraw sold and conveyed many small tracts contained within the boundary of the deed from Wright, Sheriff, to him.  The said McCraw died intestate in 1836 leaving him surviving William McCraw, Nancy Boyer, wife of Stephen Boyer, Edmund W. McCraw, Elizabeth Collett, wife of David Collett, of lawful age, and Paulina, Sarah and Jacob McCraw, minors, his

children and only heirs-at-law. In March, 1837, these heirs filed an *ex parte* petition in the Court of Equity of Surry County, to sell the lands of their father, James McCraw. In said petition they say "that they are seized and possessed as tenants in common of about thirty-three or four thousand acres of land situate in the County of Surry, between Rockford and the Blue Ridge; that said lands are very poor and broken, without any settlements upon them; that very little of said lands are, in the opinion of the petitioners, fit for cultivation; that it is true there is here and there a small piece susceptible of improvement."

Under this petition the Clerk and Master was appointed a Commissioner with power to sell the land, publicly or privately, under which power he made many sales of small tracts, which he reported to Court and they were confirmed.

This suit was transferred to the Superior Court docket and remained there until 1889, during which time various sales and orders were made thereunder. In 1889 the plaintiff, John L. Worth, as Commissioner, sold the residue of said land and David W. Worth became the purchaser, and the plaintiff has since become the owner of whatever estate the said David W. acquired by said sale. It was shown that the boundary contained in the deed from Wright, Sheriff, to James McCraw covered the land in controversy.

The Court admitted in evidence the grants to Shober, the deed from Shober to Pickering, the deed from Wright, Sheriff, to James McCraw, the deeds made by James McCraw to small tracts claimed to be a part of the land described in the deed of Wright, Sheriff, the petition and proceedings to sell the land for partition filed in March, 1837, and referred to above. The plaintiff then offered in evidence sundry deeds made by the Clerk and Master between 1837 and 1892, under this petition,—objected to by defendant and excluded.

They were then offered for the purpose of showing possession under the Sheriff's deed, and allowed for that purpose.

The plaintiff then proposed to show by parol evidence that the lands intended to be described in the bill of March, 1837, is the same land as that described in the deed of Wright, Sheriff;—objected to and excluded. The plaintiff then introduced the amendment, made to the original bill in 1892; he then offered the deed from him as Commissioner to David W. Worth and the *mesne* conveyances from David W. to the plaintiff. He also offered deeds from a part of the heirs-at-law of James McCraw to plaintiff.

Here, the plaintiff rested, and upon an intimation from the Court that he had not made a case, submitted to a judgment of non-suit and appealed.

In actions of ejectment the plaintiff must recover upon the the strength of his own title. There are exceptions to this general rule, but this case does not fall within these exceptions.

The defendant contends that there are two fatal defects in the plaintiff's title; that the deed from Wright, Sheriff, to James McCraw is only a color of title, and that there has been no possession shown to ripen it into a perfect title; and that the description in the original bill, filed March, 1837, is so fatally defective as not to support any sale made thereunder.

There are but two exceptions to evidence—one to the exclusion of deeds made by the Clerk and Master, not to the land in controversy, but to other small tracts contained in the boundary of the Sheriff's deed. But they were offered again for the purpose of showing, or tending to show, possession of the land in dispute, and were admitted. So, it would seem that if there was anything in this exception, it was cured. And the other exception is that the plaintiff "offered parol evidence for the purpose of identifying the land mentioned in the original bill." We do not see any

error in this ruling as there is no description at all in the bill, to be aided by parol. But if there had been error in this ruling, it would have been harmless, as the plaintiff's title was defective, and his action must have failed on other grounds.

At the time of the sale by Wright in 1813, the Sheriff being the statutory agent of the State, his acts are strictly construed. And it devolved upon the purchaser at a tax sale to show that the law had been complied with in making the sale. *Avery* v. *Rose*, 15 N. C., 549, and cases cited under this case in Womack's Digest; *Hays* v. *Hunt*, 85 N. C., 303. This continued to be the law, with very little modification, until 1887, when the Legislature changed the rule of presumptions. And now it is about as hard to defeat a tax title, as it was before to establish one. Under the law as it stood at that time, the deed from Wright, Sheriff, to James McCraw, without other evidence was no more than color, which might be ripened into a title by open, notorious and continuous possession for seven years.

James McCraw during his life sold off and conveyed many small tracts included within the boundary of the Sheriff's deed, and the Clerk and Master also sold and conveyed many small tracts under the proceedings upon the bill filed in 1837, and this, the plaintiff claims, is evidence tending to prove possession. But this is not so. Possession means, some one on the land, exercising the rights of dominion and ownership over the same—some one who is liable to be sued in ejectment by the owner. If McCraw had leased this land to a tenant, though he only occupied an acre, his possession in law would have extended to the boundaries contained in the deed. And the only ground for claiming that the purchaser's possession is that of the grantor is that the purchaser claims his title under the grantor. But this will not do for two reasons: First, that

121—46

while he derives his title from the grantor, he does not hold possession under the grantor, nor does he owe any duty to the grantor, but holds possession in his own right; and second, for the reason that his possession is restricted to the boundaries contained in his own deed.    It must therefore follow that these deeds, and the possession of the purchasers holding under their deeds, afford no evidence of possession of land not included in their deeds.    Although Wright's deed was made in 1813, it is no better or more effective now than it was when it was made, as it has not been aided by possession.    *Huneycutt* v. *Brooks*, 116 N. C., 788.

But the facts in *Ruffin* v. *Overby*, 105 N. C., 78, are so nearly identical with the facts in this case, that we feel we have taken more time in discussing this case than we should have done.    *Ruffin* v. *Overby* is decisive of this case.

There is no error and the judgment of the Court below is affirmed.

Affirmed.